**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **E.P.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. ____** |
| **G6 HOSPITALITY, LLC;** | : | |
| **G6 HOSPITALITY** | : | |
| **PROPERTY LLC,** | : | **JURY TRIAL DEMANDED,** |
| | : | **PURSUANT TO Fed.R.Civ.P. 38** |
| **Defendants.** | : | |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff in the above-styled action and hereby files her Complaint as follows:

1.

This case involves the sex trafficking of a child. Plaintiff E.P. was trafficked for sex as a 15-year-old at the Motel 6 located at 2810 Lawrenceville Hwy, Tucker, GA 30084 ("Motel 6") from approximately January 2014 – March 2014. Plaintiff is identified only by her initials given the nature of the case and that she was a minor at the times pertinent to the events alleged herein.[1]

2.

[1] A Motion for Protective Order regarding Plaintiff's identity is being filed contemporaneously herewith.

Plaintiff's lawsuit against Defendants arises under The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), and Texas Civil Practice and Remedies § 98.002.

3.

The TVPRA authorizes lawsuits against perpetrators of trafficking ***and*** beneficiaries of trafficking. In this lawsuit, Plaintiff alleges that Defendants violated the beneficiary provision of the TVPRA. Plaintiff does not allege that Defendants perpetrated her sex trafficking.

The beneficiary provision of the TVPRA provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew ***or should have known*** has engaged in an act in violation of" the TVPRA. 18 U.S.C. § 1595(a) (emphasis added). Defendants violated § 1595(a) because Defendants "knowingly benefit[ed]" from "participation in a venture" that Defendants "knew or should have known [] engaged in an act in violation of" the TVPRA, namely: Defendants (i) rented rooms at the Motel 6 in which Plaintiff was sex trafficked to Plaintiff's trafficker and associates and sold goods, like condoms, to Plaintiff, (ii) profited from rental of the rooms and sale of the goods, and (iii) did so notwithstanding that Defendants knew or should have known that Plaintiff was a victim of minor sex

trafficking at the Motel 6. As such, Defendants are liable to Plaintiff for her damages under the TVPRA.

4.

Plaintiff was sex trafficked at the Motel 6, and commercial sex crimes, including prostitution and sex trafficking, were common occurrences at the Motel 6, because Motel 6 chose to ignore, allow, condone, facilitate, support, and/or permit such activity at the hotel. Defendant G6 Hospitality, LLC and Defendant G6 Hospitality Property, LLC are liable to Plaintiff for their actions and failures to act.

## PARTIES, JURISDICTION, AND VENUE

5.

Plaintiff E.P. is a citizen of the United States of America and a resident of the State of Georgia. She consents to the jurisdiction of this Court. Though Plaintiff E.P. was 15 years old when she was trafficked at Motel 6, she is now an adult.

6.

Defendant G6 Hospitality, LLC's principal office address is 4001 International Parkway, Carrollton, TX, 75007, USA. Defendant G6 Hospitality, LLC's registered agent for service of process is Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076, USA, where Defendant

G6 Hospitality LLC can be served.[2]

7.

Defendant G6 Hospitality Property, LLC's principal office address is 4001 International Parkway, Carrollton, TX, 75007, USA. Defendant G6 Hospitality Property, LLC's registered agent for service of process is Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076, USA, where Defendant G6 Hospitality Property, LLC can be served.

8.

On information and belief, during the relevant period Defendant G6 Hospitality, LLC and Defendant G6 Hospitality Property, LLC were in a joint venture and/or an agency relationship. Defendants are directly liable for their own acts, omissions, and negligence, and vicariously liable for the acts, omissions, and negligence of their co-Defendant and their co-Defendant's agents and employees, as discussed herein. Defendants breached duties imposed by law, assumed by contract, assumed by behavior, and/or voluntarily undertaken. Defendants are legally liable to Plaintiff.

---

[2] Whenever reference is made in this Complaint to any action, inaction, or conduct of the Defendants named in this Complaint, the allegation is that the Defendants engaged in the action, inaction, or conduct at issue by or through one or more of their respective officers, directors, agents, employees, or representatives who were engaged in the management, direction, control, or transaction of the ordinary business and affairs of the respective Defendants.

9.

During the relevant period, Defendant G6 Hospitality, LLC, and Defendant G6 Hospitality Property, LLC, earned revenue from owning, operating, and/or managing the Motel 6. That revenue resulted from renting hotel rooms at the Motel 6 and selling goods (drinks, snacks, condoms, etc.) to customers, among other things.

10.

During the relevant period, Defendant G6 Hospitality, LLC, and Defendant G6 Hospitality Property, LLC, earned revenue from renting hotel rooms to Plaintiff's trafficker at the Motel 6, including the rooms in which Plaintiff was victimized.

11.

During the relevant period, Defendant G6 Hospitality, LLC, and Defendant G6 Hospitality Property, LLC, earned revenue from selling goods (drinks, snacks, condoms, etc.) to Plaintiff and her trafficker at the Motel 6.

12.

On information and belief, during the relevant period, Defendants reviewed hotel performance data, room occupancy data, profitability data, online reviews, and other performance metrics in connection with managing and/or operating the Motel 6.

13.

Defendants are directly liable for their acts, omissions, and negligence. Defendants breached duties imposed by law, assumed by contract, assumed by behavior, and/or voluntarily undertaken. Defendants are legally liable to Plaintiff.

14.

Jurisdiction and venue are proper as to Defendant G6 Hospitality, LLC, and Defendant G6 Hospitality Property, LLC. Further, Defendant G6 Hospitality, LLC, and Defendant G6 Hospitality Property, LLC, were properly served with process in this action.

15.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, because Plaintiff asserts claims arising under 18 U.S.C. § 1595(a), and pursuant to 28 U.S.C. § 1367, because Plaintiff's state law claims form part of the same case or controversy as her federal law claims.

16.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the juridical district where this action is brought.

## INTRODUCTION

17.

Plaintiff E.P. was trafficked for sex as a 15-year-old at the Motel 6 in violation

of 18 U.S.C. § 1591.[3]

18.

Minor sex trafficking includes recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, ***or*** soliciting a person for a "commercial sex act" who is under the age of 18. 18 U.S.C. § 1591(a)(1), *et seq.*

19.

18 U.S.C. § 1591 defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

20.

Plaintiff was sex trafficked at Motel 6 ***both*** when she performed commercial sex acts at Motel 6 ***and*** before and after she performed those commercial sex acts—that is, when at Motel 6 she was recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited for a commercial sex act as a 15-year-old.

21.

Unlike sex trafficking of an adult, sex trafficking of a minor does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. §

[3] 18 U.S.C. § 1591 criminalizes, among other things, sex trafficking minors. 18 U.S.C. 1595(a) provides a civil cause of action related to violations of 18 U.S.C. § 1591 against perpetrators of minor sex trafficking *and* beneficiaries of sex trafficking. Plaintiff's lawsuit arises under a beneficiary theory of liability.

1591(a)(1), *et seq*.

22.

At all times relevant hereto, Defendants owned, operated, maintained, controlled, and/or managed the Motel 6.

23.

At all times relevant hereto, Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the Motel 6, giving Defendants specific and direct knowledge of crimes at the hotel during the relevant period.

24.

Under the TVPRA, Defendants had a duty not to (1) knowingly benefit, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) when the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. To fulfill their duties under the TVPRA—that is, to obtain the actual or constructive knowledge a reasonable hotel owner and operator should have of its business—Defendants needed to take reasonable steps to secure the property and monitor activity on the property, including but not limited to: inspecting and monitoring the hotel and its guests and visitors; providing sufficient security at the property; vetting, training, and

supervising hotel staff; remediating the property in light of known criminal risks; and acting as a reasonable hotel would to deter and prevent commercial sex, crimes against women, missing and runaway underage girls, sex crimes, and sex trafficking, among other crimes, to keep the property in a reasonably secure and safe condition for guests and visitors alike.

25.

During the period at issue, Defendants knew or should have known of the reasonable and common-sense signs, red flags, and policies to identify, address, and deter prostitution and sex trafficking at the Motel 6, and to mitigate the risk of profiting from prostitution and sex trafficking at the Motel 6, as required by federal law.

26.

Rather than implementing reasonable and common-sense steps to identify, address, and deter sex trafficking and prostitution at the Motel 6, Defendants chose to take part in a common undertaking or enterprise involving risk and potential profit. That is, Defendants rented rooms and sold goods to Plaintiff's trafficker and Plaintiff on a repeated, ongoing basis, notwithstanding the host of common-sense signs and red flags of sex trafficking arising from Plaintiff's age, attire, appearance, conduct, and the rooms in which she was trafficked that Defendants knew or should have known indicated Plaintiff was being sex trafficked as a minor at the Motel 6.

Defendants staff repeatedly saw and interacted with Plaintiff and Plaintiff's trafficker, and entered the rooms in which Plaintiff was trafficked. By failing to follow reasonable and common-sense steps to identify, address, and deter sex trafficking and prostitution at the Motel 6, Defendants participated in, facilitated, condoned, allowed, or ignored the sex trafficking of Plaintiff for days and weeks at the Motel 6.

27.

By encouraging others to enter Motel 6's premises and to pay monies for the use of the premises, Defendants made an implied representation that they had exercised reasonable care to make those premises safe for those coming upon the property, including the Plaintiff.

28.

Defendants breached their respective duties to the Plaintiff under the TVPRA and Texas Civil Practice and Remedies § 98.002 by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff at the Motel 6 in exchange for commercial gain and in total disregard of the rights of the Plaintiff.

29.

Defendants acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the Motel 6 to identify, address, and deter

prostitution and sex trafficking, by failing to train their managers, employees, and staff to be on the lookout for reasonable and common-sense signs of prostitution and sex trafficking, by failing to take adequate measures at to identify, address, and deter prostitution and sex trafficking at the hotel, by allowing rooms at the hotel Inn to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other women for days and weeks, and by failing to otherwise protect and/or warn guests and visitors about dangerous and hazardous conditions at the hotel about which the hotel had actual and/or constructive knowledge. Through such actions and omissions, among others, Defendants allowed, condoned, facilitated, and/or ignored the sex trafficking that victimized the Plaintiff in this case.

**A. Plaintiff's Minor Sex Trafficking at the Motel 6**

30.

Plaintiff was sex trafficked as a minor at the Motel 6 in approximately January – March 2014.

31.

During the entire period Plaintiff was sex trafficked at the Motel 6, she was 15 years old. She was missing her freshman year of high school at the time she was sex trafficked at the Motel 6 for months.

32.

Plaintiff's sex trafficker and/or his associates reserved and paid for rooms at the Motel 6 from approximately January 2014 – March 2014 to sex traffic Plaintiff at the Motel 6.

33.

During the months she was sex trafficked at Motel 6 as a 15-year-old girl, Plaintiff engaged in commercial sex acts with approximately 5-10 men per day in rooms at the Motel 6 rented by her trafficker and/or his associates.

34.

On some days she performed commercial sex acts with approximately 15 men in rooms at the Motel 6 rented by her trafficker and/or his associates.

35.

Over the weeks that Plaintiff was trafficked at Motel 6, dozens and dozens and dozens of adult men visited rooms in which Plaintiff was trafficked at the Motel 6 to purchase sex with Plaintiff and visited other rooms at the Motel 6 to purchase drugs from traffickers and dealers and/or to engage in other illicit activities on the hotel premises.

36.

While at the Motel 6, Plaintiff's trafficker directed her to charge approximately $100 for 30 minutes of commercial sex acts, and approximately $200 for 60 minutes of commercial sex acts.

37.

At all relevant times, Plaintiff did not keep any of the money buyers of commercial sex acts paid her. All the money paid to Plaintiff by buyers of commercial sex acts was collected and held by Plaintiff's trafficker.

38.

Plaintiff wore scant clothing and loitered in the Motel 6's common areas (e.g., breezeways, parking lot) and in doorways with the door propped open to meet commercial sex buyers visiting the Motel 6 looking to buy sex acts.

39.

During the relevant period, commercial sex buyers pulled into the parking lot at the Motel 6 and circled the building while driving slowly looking for girls and women to pay for commercial sex acts. Scantily-dressed girls and women were on display in the common areas of the Motel 6 so that the commercial sex buyers could select one of the girls and women to purchase for illegal commercial sex.

40.

Before and after Plaintiff performed commercial sex acts at Motel 6, Plaintiff's trafficker: ***recruited*** Plaintiff at Motel 6 to participate in commercial sex acts at Motel 6; ***enticed*** Plaintiff at Motel 6 to participate in commercial sex acts at Motel 6; ***harbored*** Plaintiff at Motel 6 for purposes of commercial sex transactions at Motel 6; ***transported*** Plaintiff to and around Motel 6 for purposes of commercial

sex transactions at Motel 6; ***provided*** Plaintiff at Motel 6 to sex buyers for commercial sex transactions at Motel 6; ***obtained*** Plaintiff at Motel 6 for commercial sex transactions at Motel 6; ***advertised*** Plaintiff at Motel 6 for commercial sex transactions at Motel 6; and ***maintained*** Plaintiff at Motel 6 for commercial sex transactions at Motel 6.[4]

41.

Before and after Plaintiff performed commercial sex acts at Motel 6, sex buyers at Motel 6 ***solicited***, ***obtained***, ***patronized*** Plaintiff at Motel 6 for commercial sex acts at Motel 6. The sex buyers who solicited, obtained, and patronized Plaintiff also sex trafficked Plaintiff at Motel 6.[5]

---

[4] As alleged previously, Plaintiff was sex trafficked at Motel 6 ***both*** when she engaged in commercial sex acts at Motel 6 ***and*** before and after the commercial sex acts, when she was recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited for commercial sex acts at Motel 6 as a 15-year-old.

Defendants are liable under the beneficiary provision of 18 U.S.C. 1595(a) ***both*** because they knowingly benefited from selling rooms and goods to Plaintiff and her trafficker when Defendants knew or should have known Plaintiff was engaging in commercial sex acts at Motel 6, ***and*** because they knowingly benefited from selling rooms and goods to Plaintiff and her trafficker when Defendants knew Plaintiff was recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited for a commercial sex act at Motel 6 as a 15-year-old.

[5] When Plaintiff uses the term "Plaintiff's trafficker," she is referring to the 32-year-old man who controlled, directed, monitored, oversaw, and profited from her commercial sex acts at Motel 6, and recruited, enticed, harbored, transported, provided, obtained, advertised, and maintained Plaintiff for commercial sex acts at Motel 6. Others also sex trafficked Plaintiff at Motel 6, including but not limited to

42.

Plaintiff's trafficker was verbally abusive and threatened Plaintiff at Motel 6. Plaintiff's trafficker monitored her activity at Motel 6.

43.

During one weekend from January – March 2014, Plaintiff's trafficker took Plaintiff away from Motel 6. When she returned, other women at the Motel 6 (who were also engaging in commercial sex there) notified Plaintiff that law enforcement had visited the hotel with pictures of Plaintiff and asked staff and guests about Plaintiff, a missing 15-year-old.

44.

On information and belief, Defendants were warned by law enforcement to be on the lookout for Plaintiff, a missing 15-year-old.

45.

After law enforcement visited Motel 6 asking about Plaintiff, Plaintiff's trafficker continued trafficking Plaintiff at Motel 6. Plaintiff's trafficker continued regularly interacting with Defendants' staff and renting rooms to traffic Plaintiff. Likewise, Plaintiff continued interacting with Defendants' staff, buying condoms, loitering in common areas in scant clothing, and meeting with dozens of sex buyers.

---

sex buyers who solicited, obtained, and patronized Plaintiff for commercial sex at Motel 6.

46.

On one occasion at Motel 6, Plaintiff was locked out of the room her trafficker had rented to traffic her. She went to the front desk for a new key to get back into the room. She was scantily clad. The room was reserved to Plaintiff's 32-year-old trafficker, who Defendants knew had rented rooms at the hotel for days and weeks. The 15-year-old Plaintiff told Defendants' front desk attendant that her 32-year-old trafficker was her "boyfriend," and that she needed a key to get back into her "boyfriend's" room. With the proverbial wink and nod, Defendants' front desk attendant gave Plaintiff a new room key. By doing so, Plaintiff's victimization would continue, and Defendants would continue to profit from Plaintiff's trafficking.

47.

By going along with the obvious fiction that the scantily-clad 15-year-old Plaintiff's "boyfriend" was the 32-year-old man who had rented rooms at the Motel 6 for days and weeks on end, Defendants actively participated in Plaintiff's sex trafficking, including, for example, by assisting, allowing, and facilitating the maintaining, harboring, and providing of Plaintiff for commercial sex acts at Motel 6.

48.

During the relevant period, Defendants sold condoms in a vending machine at Motel 6. The 15-year-old Plaintiff purchased condoms from the vending machine

many times. To get to the vending machine to purchase condoms for her sexual exploitation, Plaintiff had to walk by the front desk, where employees saw or should have seen that a young girl was frequently buying condoms and returning to her room.

49.

During the relevant period, commercial sex activity and drug activity was pervasive at the Motel 6. The hotel was busy with a high volume of visitors to the hotel coming and going for commercial sex and/or drug transactions.

50.

During the relevant period, multiple traffickers sat in cars parked in the parking lot at the Motel 6 and waited for their trafficking victims to complete commercial sex acts. The traffickers would linger and loiter in the Motel 6 parking lot between frequent commercial sex acts during the daytime and the nighttime. During the time Plaintiff was at the hotel, she saw men supervising women being sold for sex at the hotel.

51.

On information and belief, Defendants had many surveillance cameras monitoring the Motel 6 common areas that would have captured loitering traffickers and pimps, the steady flow of sex buyer traffic, and the loitering, scantily-clad girls and women being exploited at the Motel 6.

52.

For at least part of the time Plaintiff was sex trafficked at the Motel 6, she was in a room with another woman who also engaged in commercial sex acts.

53.

During the relevant period, Plaintiff observed other girls and women who were engaged in commercial sex activity at the Motel 6. Plaintiff talked with other girls and women engaged in such activities and witnessed them loitering in provocative clothing in the Motel 6's breezeway, parking lot, and in doorways, and flagging men down who were circling the parking lot for commercial sex acts.

54.

During the relevant period, publicly available message boards for Atlanta-area sex buyers emphasized that Motel 6 was an ideal destination to indulge their appetites for commercial sex, at least in part because "management is in on it too," and the managers and housekeepers appeared "as if they were look outs."[6]

[6] This August 2013 post comes from the message board, www. usasexguide.nl/forum/ (last visited March 8, 2024). It cites to three commercial sex ads on Backpage for women at Motel 6.

08-12-13 14:18 #454

**Johnny Mapalo**
Senior Member
Posts: 1968

**Pimp Alert!**

Ahh. I haven't been posting in a while due to my laptop taking a dive but I'm here now. Ok, I used to see a lot of girls posting in the Lawrenceville Hwy area and wanted to see what they were all about. This was about 2 weeks ago. I was thinking they were maybe like the Pure Silence girls on Peachtree Industrial. Just a group of girls doing their thing. Wrong! When I got to the ran down Motel 6 off Lawrenceville Hwy I knew this was skank city. Got to the girls room and the place was filthy. The girl was too skinny for me so I bounced. As I was leaving a dude and a girl came out of a car 3 spots next to my car. As I was driving by the dude and girl in the parking lot, the dude signaled to me that he had another broad available. I just gave him the that's ok look and bounced. Looks like the whole management is in on it too as I saw the Indian managers outside as well as the housekeepers. They were all looking as if they were look outs. I just saw someone below post an add for one Lawrencville Hwy girl below and she's one of them too. Buyer beware. The pimp wasn't scaring looking though. About 5'10 and stocky built. He could have just been their protection but I don't really roll like that. The girls prices are pretty high too and I never suspected a pimp but when I saw the dude outside showing me another broad I knew what time it was. Here are the broads links below. The 1st link is the one who I went to see. She was on Lawrenceville Hwy at the time:

http://atlanta.backpage.com/WomenSee...ng-19/19343341

http://atlanta.backpage.com/WomenSee...ls-21/15295867

http://atlanta.backpage.com/WomenSee...it-19/19045982

Report Post

55.

During the relevant period, Defendants had ample opportunity to observe Plaintiff's age, attire, appearance, behavior, and the room in which she was trafficked, and as such, Defendants had ample opportunity to detect a litany of red flags indicating she was a sex trafficking victim. For example:

- For days and weeks, Plaintiff wore scant clothing and loitered in the Motel 6's common areas (e.g., breezeways, parking lot, doorways) to attract commercial sex buyers.
- For days and weeks, a stream of dozens of commercial sex buyers came and went from the Motel 6 after paying for commercial sex acts with Plaintiff at the hotel.
- For days and weeks, Plaintiff walked around the hotel premises,

common areas, and approaches alone, with her trafficker, and/or in the company of different men during periods when school was in session for children like Plaintiff.

- Over the days and weeks Plaintiff lived at the Motel 6, Plaintiff repeatedly walked past the lobby of the hotel in scant clothing to buy condoms multiple times in a single day.
- Over the days and weeks Plaintiff lived at the Motel 6, she talked with front desk staff on multiple occasions, including when she was locked out of a room at the Motel 6 and the Defendants happily gave the scantily-clad 15-year-old a new key based on the obvious lie that the 32-year-old man who had rented rooms at the hotel for days and weeks was her "boyfriend."
- Over days and weeks, Plaintiff talked with housekeeping staff, many of whom entered the rooms in which Plaintiff was trafficked and saw condoms, lotions, multiple cell phones, and weapons in the rooms, Plaintiff and her trafficker, and at times other women, and excessive towels and linens.
- Plaintiff exhibited numerous visible signs of minor sex trafficking victims, including her age, attire, and inappropriate appearance, fatigue, sleep deprivation, a failure to make eye contact with others, loitering,

and soliciting male patrons.

Defendants knew or should have known that the common-sense signs set forth above relating to Plaintiff's age, attire, appearance, conduct, and rooms in which she was trafficked, were evidence of sex trafficking of Plaintiff.

56.

Defendants knew or should have known that Plaintiff was being sex trafficked at Motel 6.

57.

Defendants failed to respond to the signs that it knew or should have known indicated that Plaintiff was a minor sex trafficking victim at Motel 6. Defendants failed to secure the property, including the common areas and approaches; monitor the property; train its staff; supervise its staff; and respond to visible, common-sense signs of minor sex trafficking.

58.

Plaintiff's trafficker interacted with hotel staff, who accommodated his requests and thereby allowed, facilitated, and/or assisted Plaintiff's minor sex trafficking. Plaintiff's trafficker and/or his associates spoke to a hotel employee to, among other things, reserve the rooms in which Plaintiff would be trafficked and to extend room reservations for additional nights to continue trafficking Plaintiff.

59.

Plaintiff's trafficker (and/or his associates) rented rooms at the Motel 6 repeatedly and transacted business at the Motel 6 repeatedly over the course of the weeks he was trafficking Plaintiff at the Motel 6. As such, Plaintiff's trafficker (and/or his associates) were familiar to Defendants' employees, agents, and/or representatives at the Motel 6.

60.

Defendants' staff assisted Plaintiff's trafficker by renting him rooms while Defendants had actual or constructive knowledge that Plaintiff was sex trafficked in those rooms.

61.

On information and belief, Defendants knew or should have known that girls and women regularly engaged in commercial sex acts at Motel 6 during the relevant period.

62.

On information and belief, Defendants reviewed hotel performance data, room occupancy data, profitability data, online reviews, and other performance metrics in connection with managing and/or operating the Motel 6.

63.

On information and belief, Defendants turned a blind eye to safety and security issues at the Motel 6 when revenue was satisfactory, even when Defendants

knew or should have known part of the revenue was derived from rental of rooms to Plaintiff's sex traffickers, who were using the rooms to victimize Plaintiff.

64.

At all relevant times, Defendants received revenue from the operation of the Motel 6, including through room rentals at the Motel 6. Defendants received revenue from renting the rooms in which Plaintiff was trafficked.

65.

As described in the foregoing paragraphs, Defendants knew or should have known that Plaintiff was a minor victim of sex trafficking who was being sex trafficked at the Motel 6, over which Defendants exercised control.

66.

Defendants are liable to Plaintiff for violation of the TVPRA because Defendants (1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and potential profit (e.g., managing the Motel 6 for profit; operating the Motel 6 for profit; renting rooms at the Motel 6 for profit; selling goods, including condoms, at the Motel 6 for profit; renting rooms and selling goods for profit to Plaintiff's trafficker and Plaintiff notwithstanding that Defendants knew or should have known that Plaintiff was a minor sex trafficking victim), (3) when the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise

violated the TVPRA as to the Plaintiff.

67.

The undertaking or enterprise violated the TVPRA as to the Plaintiff because she engaged in commercial sex acts dozens and dozens and dozens of times over weeks and weeks at the Motel 6 as a 15-year-old. ***Additionally, and separately***, the undertaking or enterprise also violated the TVPRA as to the Plaintiff because she was recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited for commercial sex acts at the Motel 6 as a 15-year-old. Consequently, Plaintiff was sex trafficked both when she engaged in commercial sex acts at Motel 6 and through acts occurring prior and subsequent to her engagement in commercial sex acts (*i.e.*, when she was recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited for a commercial sex act at the Motel 6 as a 15-year-old).

**B. Sex Trafficking, Prostitution, and Other Crimes were Frequent and Foreseeable at the Motel 6**

68.

Motel 6 knew or should have known that its premises and approaches were rife with crime, including minor sex trafficking and prostitution, before, during, and after Plaintiff's sex trafficking. Publicly available information, including but not limited to police reports and online reviews relating to the Motel 6, document pervasive criminal activity at the hotel, including commercial sex. Such information

provided Defendants with actual or constructive knowledge of commercial sex at the Motel 6 as well as actual or constructive knowledge of the foreseeable risk of commercial sex at the hotel involving minors.

69.

For example, Defendants knew or should have known of the following crimes, among others, occurring on Motel 6's premises and approaches before, during, and after Plaintiff was sex trafficked at the Motel 6 based on publicly available police reports:

a. On January 31, 2011, the Dekalb County Police Department obtained arrest warrants for a man who had been "associated with" and "seen with" "several other subjects that have been linked to prostitution and drug related activity" at the Motel 6.

b. On June 29, 2011, the Dekalb County Vice Unit "conducted a prostitution sting at 2810 Lawrenceville Highway, the Motel 6," and arrested a woman for commercial sex at the hotel.

c. On August 5, 2011, the Dekalb County Vice Unit arrested a woman charging $60 for commercial sex acts out of room 309 at the Motel 6.

d. On December 16, 2011, the Dekalb County Police Department arrested a man at Motel 6 involved with "prostitution and criminal

activities" when he was "showing an unknown female where Motel 6 was located."

e. On June 13, 2012, the Dekalb County Police Department arrested a woman with prostitution and her "boyfriend" for pimping, felon in possession of a firearm, and marijuana possession at the hotel.

f. On August 15, 2012, the Dekalb County Police Department Vice and Narcotics United "were conducting a 'street sweep' operation at the Motel 6 located at 2810 Lawrenceville Highway after receiving several complaints of prostitution and drug sales taking place there." A detective "arrived at the location in undercover capacity for the purpose of picking up prostitutes and buying illegal drugs." "While standing on the third floor in the breezeway," he was approached by a woman who said she was in room 241 "with her boyfriend" and would give oral sex for $15. Later that same day, the same detective was approached by a woman "while standing on the first floor in the breeze way by the front office" about buying drugs.

g. On October 31, 2012, the Dekalb County Police Department investigated a sexual assault at Motel 6.

h. On February 15, 2013, undercover Dekalb County Police Department officers conducted surveillance at the hotel "in reference to

complaints of narcotics and prostitution violations." During the surveillance, the Dekalb County Police Department went to Room 333 "in reference to a large amount of foot traffic coming and going from the location." "Upon knocking at the door four females were found to be inside the room."

i. On February 15, 2013, undercover Dekalb County Police Department officers conducted surveillance at the hotel and "observed heavy foot traffic … at multiple rooms in the location… both officers advised room 319 was one of the rooms in question." Room 319 included a number of openly visible drugs, and the occupants of Room 319 had other rooms rented at the hotel.

j. On March 2, 2013, the Dekalb County Police Department responded to a call regarding a woman beaten by two men in Room 201. One of the men conveyed that he wanted to be the woman's "pimp." When she said, "no," the man threatened to kill her with a knife. When police went to Room 203, they found three females inside.

k. On March 8, 2013, the Dekalb County Police Department investigated a mother engaging in commercial sex acts at the Motel 6 with a 1-year-old baby in the room.

l. On March 10, 2013, DFCS notified the Dekalb County Police Department that a mother was "prostituting" at Motel 6.

m. On March 13, 2013, the Dekalb County Police Department investigated a case involving a woman who overdosed on meth and other drugs at Motel 6 with two men and another woman. "She was unclear about what had happened at the hotel."

n. On May 9, 2013, the Dekalb County Vice Unit conducted a sting operation and arrested a woman performing "sexual acts for one hour in exchange for $120" in room 212 at the Motel 6.

o. On August 24, 2013, the Dekalb County Police Department investigated a case where a Motel 6 guest met two sex workers at the hotel, brought them to his room, and then was robbed by two men demanding payment.

p. On January 5, 2014, the Dekalb County Police Department investigated a sexual assault at the Motel 6.

q. On April 21, 2014, the Dekalb County Police Department Vice United conducted an undercover operation at the Motel 6. "The operation was conducted in reference to citizen complaints of prostitution taking place in the area." As part of the operation, the

Police Department arrested a woman for performing sexual acts for one hour in exchange for $120 in room 335 at the Motel 6.

70.

The list of criminal conduct set forth in the foregoing paragraph only skims the surface of the pervasive crime generally, and sex trafficking and prostitution specifically, occurring at the Motel 6 before, during, and after Plaintiff was trafficked there as a child. The foregoing paragraph merely illustrates some of the rampant crimes, including prostitution and sex trafficking, occurring at the Motel 6 about which Defendants knew or should have known.

71.

Defendants also knew or should have known that publicly available online reviews of the Motel 6 similarly emphasize the pervasiveness of all manner of crime at the hotel during the relevant period, including commercial sex crimes. For example, some publicly available customer reviews on Google.com, Priceline.com, Kayak.com, and/or TripAdvisor.com state:

- “NOT the place you wanna be. This motel is domestic violence & prostitute central! Never again will I stay there.” (Trip Advisor, 2010)
- “There were people loitering around, which made us feel uneasy and all the people who appeared to live there had the ground (1st) floor.” (Trip Advisor, 2010)

- "[T]his place was too much… Prostitutes, gangsters (who tried to steal my car), nasty rooms that smell of urine[.]" (Trip Advisor 2011)
- "Sketchy, questionable tenants… 2 asian kids approached me asking for ladies." (Trip Advisor, 2012)
- "This motel is surrounded by concrete walls – the one next to the road is about 20 feet high. That means that it is completely obscured from the view of everyone and that encourages illegal activity. There were 10 or 12 young guys hanging out in the parking lot. People were peering at me out of windows. There was no normal motel traffic at all – no people with suitcases or overnight bags going in or people coming out of rooms – just a bunch of young guys pacing up and down the parking lot talking on their cell phones." (Trip Advisor, 2013)
- "[T]here were prostitutes, along with drug dealers, kids running around unsupervised. It was just a mess." (Priceline, 2013)
- "Motel 6 is usually where we stay when we go out of town never had a problem until we stayed at this one it was the worst experience I have ever had!!!!!!!!!! It was nasty, not clean at all and outside there were hookers and pimps which went on all night. Next morning I

called to complain and they did nothing. I would not left my wife go outside it was just too dangerous!" (Google, 2014)

- "Got people hanging around the building … might be selling dope out here." (Google, 2014)
- "Come here to buy drugs, other than that go somewhere else… the other one star reviewers aren't lying. I rolled up at one in the morning on a Wednesday and there were people everywhere." (Google, 2014)
- "I don't know why Motel 6 management has allowed this one to be taken over by creeps, but it has. This place will not give you a good night sleep will at the night drug deals and hookers yelling, slamming doors, and dogs barking… needs to be shut down by the city." (Trip Advisor, 2014)
- "Drugs, prostitution, crowded parking lot… all of those things were present[.]" (Trip Advisor, 2014)
- "Run away… don't step foot here… I waste 240 for the week because I left after two days… I smelled all sorts of drugs in the hall… prostitutes everywhere no lies." (Trip Advisor, 2015)
- "Very dangerous hotel. Lots of drug and prostitution activity." (Google, 2015)

- "I don't recommend anyone staying here unless you're okay with … being surrounded by drug dealers and hookers[.]" (Google, 2015)
- "We had yelling all night telling the female to get back into the hotel before he beat her back in. 12 am and there was people walking around." (Google, 2016)
- "[S]ometimes during the days or nights there were people loitering around the premises. During the day there were kids outside selling water and things." (Kayak, 2016).

72.

Defendants knew or should have known of the online reviews about the property in connection with managing and/or operating the Motel 6, and as such, knew or should have known about online reviews reporting pervasive crime, drugs, commercial sex crimes, loitering, and more at the Motel 6, among other problems.

73.

For example, on August 3, 2013, Defendants' employee, manager, and/or agent, "Motel6, Public Relations Manager at Motel 6 Atlanta Tucker Northeast," responded to a review about the hotel's "concrete walls that obscure illegal activity," "no normal motel traffic," "10 or 12 young guys hanging out in the parking lot," by saying: "Thank you for taking the time to write your review. We sincerely apologize for the unwelcoming environment you found upon your arrival at Motel 6. We take

your feedback very seriously and will take it into consideration as we work to improve our guests' experience with us."[7]

74.

By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread criminal activity at the Motel 6 generally, and in response to Plaintiff's sex trafficking at the Motel 6 specifically, Defendants' employees, agents, and/or representatives ignored, allowed, condoned, assisted, and/or facilitated Plaintiff's minor sex trafficking at the Motel 6.

75.

As a direct and proximate result of Defendants' acts and omissions, and Plaintiff being trafficked for sex as a minor at the Motel 6, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages. Such injuries and damages were reasonably foreseeable to Defendants.

**C. <u>Defendants' Knowledge of Sex Trafficking</u>**

76.

Defendants knew or should have known of the existence of minor sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, the United Nations' adoption of the Palermo Protocol to prevent,

[7] https://www.tripadvisor.com/Hotel_Review-g35322-d86893-Reviews-or10-Motel_6_Atlanta_Tucker_Northeast-Tucker_Georgia.html (last visited March 8, 2024).

suppress, and punish trafficking in persons, and the passage of O.C.G.A. § 16-5-46 in 2007.

77.

Defendants knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

78.

Defendants knew or should have known the following: the Polaris Project found that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation … Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."

79.

Defendants knew or should have known that attorneys for the hotel industry estimated and reported to hotel industry representatives that eight out of ten human

trafficking arrests occur in or around hotels,[8] and that the industry had been warned, among other things, to "Make sure hotel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[9]

80.

G6 Hospitality, LLC claims on its website to operate "more than 1,400 motels operating in 49 states and five Canadian provinces." For these and other reasons, G6 Hospitality, LLC knew or should have known during the relevant period that sex trafficking is a common problem in hotels, knew or should have known common indicia of sex trafficking, and knew or should have known steps to identify, address, and deter sex trafficking at hotels.

81.

Further, upon information and belief, Defendants are members of hospitality trade groups (e.g., the American Hotel and Lodging Association, the Asian American Hotel Owners Association). As a member of those organizations, Defendants knew or should have known during the relevant period that sex trafficking is a common problem in hotels and motels, knew or should have known

---

[8] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry*, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983.

[9] Rich Keating, Human Trafficking: What Is it and How It Impacts the Hospitality Industry, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 at 6.

common indicia of sex trafficking, and knew or should have known steps to identify, address, and deter sex trafficking at hotels and motels.

82.

Defendants knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[10] Upon information and belief, Defendants have signed the Code.

83.

Defendants knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to combat sex trafficking, identifies six reasonable and logical steps hotels and motels can take to prevent child sex trafficking:

a. establish corporate policy and procedures against sexual exploitation of children;
b. train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;
c. include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

[10] https://thecode.org/ (last visited March 8, 2024).

d. provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e. support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

f. report annually on the company's implementation of Code-related activities.[11]

84.

Defendants knew or should have known that ECPAT is one of several high-profile organizations that for years have given hotels and motels the tools to address the scourge of sex trafficking at hotels.

85.

Defendants knew or should have known that the American Hotel and Lodging Association provides through its website "free online training modules for industry employees through ECPAT-USA" and "signage, sample policies, and other resources to help employers recognize and respond to signs of potential human trafficking."[12]

86.

---

[11] https://thecode.org/about/ (last visited March 8, 2024).

[12] https://www.ahlafoundation.org/advancement/ (last visited March 8, 2024).

Defendants knew or should have known that the American Hotel and Lodging Association website links to a free ECPAT training on sex trafficking.[13]

87.

Defendants knew or should have known that the ECPAT training available through the American Hotel and Lodging Association website states: "***Hotel associates are uniquely situated to identify and report suspicious activity. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property***. ***With proper training, a front desk agent or a housekeeper can notice that something is not right and respond***."[14] Defendants knew or should have known they had access to ECPAT's free training materials.

88.

Through Defendants' membership in the American Hotel and Lodging Association upon information and belief, Defendants knew or should have known of the prevalence of sex trafficking in the hospitality industry, knew or should have known of the free and easy access to training and materials on how to identify, address, and deter minor sex trafficking at the Motel 6, and knew or should have known of common signs of minor sex trafficking and how to respond to it.

---

[13] *Id.*
[14] https://www.wearepact.org/for-professionals (last visited March 8, 2024).

89.

Defendants knew or should have known that the United States Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and respond to human trafficking. DHS's guidelines state that, "[a]s a hospitality industry professional, you are in a unique position to recognize and report potential human trafficking violations."[15] The guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
b. persons who lack freedom of movement or are constantly monitored;
c. persons who have no control over or possession of money or ID;
d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;
e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;
f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

---

[15] https://www.dhs.gov/sites/default/files/2022-10/Hospitality%20Toolkit%20508c%2009_29_2022.pdf (last visited March 8, 2024).

g. extended stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i. the same person reserves multiple rooms;

j. a room is rented hourly, less than a day, or for an atypical extended stay;

k. cars in the parking lot regularly parked backward, so the license plates are not visible;

l. loitering and solicitation of male patrons; and

m. persons asking staff or patrons for food or money.

90.

The Asian American Hotel Owners' Association endorses BEST's Inhospitable to Human Trafficking Training and provides free access to AAHOA members and their employees.[16] The Association's website instructs: "AAHOA is committed to promoting awareness of human trafficking by educating hoteliers and their employees on how to spot and report suspected instances of human trafficking."[17]

91.

Cecil P. Staton, president/CEO of the Asian American Hotel Owners'

---

[16] https://aahoa.com/resources/human-trafficking (last visited March 8, 2024).

[17] *Id.*

Association has said: "America's hoteliers can be the first line of defense against human trafficking. ***With proper training*** … ***hotel owners and their employees can learn to identify the signs of trafficking and how to respond to potential trafficking situations***."[18] Defendants knew or should have known they had access to training materials sufficient to train their employees, agents, and representatives at Motel 6 to identify the signs of trafficking and to respond.

92.

Defendants knew or should have known of the prevalence of sex trafficking in the hospitality industry, knew or should have known of the free and easy access to training and materials on how to prevent minor sex trafficking at Motel 6, and knew or should have known of common signs of minor sex trafficking and how to identify, address, and deter it.

93.

Defendants knew or should have known that, on September 15, 2013, the Georgia legislature passed O.C.G.A. § 16-5-47 requiring hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and

[18] https://www.hotelbusiness.com/florida-mandates-human-trafficking-training/ (last visited March 8, 2024).

employees where similar notices are customarily posted." The contents of the notice are prescribed by statute but must "provide information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking." Failure to comply with O.C.G.A. § 16-5-47 is a misdemeanor.

94.

Defendants knew or should have known that during the relevant period Atlanta was a national hub of sex trafficking and that the crime was prevalent in the city, including at the Motel 6. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of the, if not the, largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.[19] Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Defendants have received

[19] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited March 8, 2024); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited March 8, 2024).

and retained some of those illicit profits through renting hotel rooms used for the trafficking of Plaintiff and other minors.

95.

Defendants knew or should have known that in 2018 the National Human Trafficking Hotline ranked Georgia fourth among states in human trafficking.[20]

96.

Defendants knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[21] and as "the number one city for child sex trafficking."[22]

97.

Defendants knew or should have known that sex trafficking is particularly pervasive in DeKalb County, where the Motel 6 is located. Defendants knew or

---

[20] Anna Varela, *Human Trafficking Ensnares More Than Half of Metro Atlanta's Homeless Youth, Georgia State Study Shows*, Georgia State University, (Oct. 21, 2019) https://news.gsu.edu/2019/10/21/homeless-youth-trafficking/ (last visited March 8, 2024).

[21] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited March 8, 2024).

[22] *Id.*

should have known that in 2017 the County police had the tragic but commendable distinction of rescuing more sex trafficking victims than any other unit in Georgia.[23]

**COUNT I**
**STATUTORY LIABILITY**
**18 U.S.C. § 1595**

98.

Plaintiff incorporates Paragraphs 1 through 97 as if fully restated herein verbatim.

99.

In violation of the TVPRA, 18 U.S.C. § 1595(a), Defendants knowingly benefitted from taking part in a common undertaking or enterprise involving risk and potential profit that Defendants knew or should have known engaged in acts in violation of the TVPRA as to Plaintiff.

100.

Defendants knowingly benefitted by receiving a percentage of the revenue generated by the operation of the Motel 6 during the relevant period, including by receiving a percentage of the revenue generated from renting the rooms in which Plaintiff was trafficked.

[23] Joshua Sharpe, *Report: DeKalb Cops Rescue the Most Sex Trafficking Victims in Georgia*, Atlanta Journal-Constitution, May 18, 2017 https://www.ajc.com/news/local/report-dekalb-cops-rescue-the-most-sex-trafficking-victims-georgia/Lg6rXccQPCcqTITunbEW0M/ (last visited March 8, 2024).

101.

Defendants took part in a common undertaking or enterprise involving risk and potential profit by: operating the Motel 6, which had an extensive history of pervasive crime and commercial sex activities; renting rooms to Plaintiff's traffickers at the Motel 6 for days and weeks, notwithstanding the red flags and signs it observed or should have observed demonstrating that Plaintiff was a minor victim of sex trafficking at the Motel 6; engaging in ongoing business relations with Plaintiff's traffickers at the Motel 6 through rental of rooms for days and weeks and sale of goods; being in direct association with Plaintiff's traffickers through repeated conversations and business transactions over days and weeks. Plaintiff's traffickers dealt with Defendants' staff at the Motel 6 repeatedly, rented rooms at the hotel repeatedly to sex traffic Plaintiff, and bought goods and services repeatedly at the Motel 6. In exchange, Defendants provided Plaintiffs' traffickers with, among other things, the rooms in which Plaintiff was victimized.

102.

The venture in which Defendants participated was in or affecting interstate commerce.

103.

Defendants knew or should have known the common undertaking or enterprise involving risk and potential profit engaged in acts in violation of the

TVPRA because Defendants, and their employees, agents, and representatives, had repeated opportunities to observe Plaintiff and did observe Plaintiff, a minor, at the hotel, with and without her traffickers, and with other victims for a time. Further, Defendants, and their employees, agents, and representatives, had the opportunity to observe the signs of minor sex trafficking exhibited by Plaintiff, her trafficker's activities, the rooms in which Plaintiff was trafficked, and the frequent traffic of adult male buyers to Plaintiff's rooms and to the hotel parking lot. Plaintiff talked to multiple employees, agents, and representatives of Defendants on multiple occasions at the Motel 6.

104.

Further, Defendants knew or should have known the common undertaking or enterprise involving risk and potential profit engaged in acts in violation of the TVPRA as to Plaintiff because Defendants, and their employees, agents, and representatives, knew or should have known of pervasive commercial sex crimes at the hotel before, during, and after Plaintiff was trafficked for sex at the Motel 6.

105.

Defendants are directly and vicariously liable under § 1595(a) for the actions of their employees, agents, and representatives.

106.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' taking part in a common undertaking or enterprise involving risk and potential profit that engaged in acts in violation of the TVPRA as to Plaintiff.

107.

Defendants are liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

108.

Defendants are jointly and severally liable for damages arising from the indivisible injuries Defendants caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## COUNT II
## TEXAS CIVIL PRACTICE AND REMEDIES CODE § 98.002

109.

Plaintiff incorporates Paragraphs 1 through 108 as if fully restated herein verbatim.

110.

Plaintiff is a victim of sex trafficking within the meaning of Texas Penal Code § 20A.02(a)(7)(A) and is therefore entitled to bring a civil action under Texas Civil Practice and Remedies § 98.002.

111.

Defendants' acts and omissions described above constitute a violation of Texas Civil Practice and Remedies § 98.002 in that at all relevant times Defendants breached their duties by participating in and facilitating the harboring, maintenance, and providing of Plaintiff for the purposes of illegal commercial sex and intentionally and knowingly benefitted from participating in a venture that trafficked Plaintiff.

112.

Defendants harbored and provided Plaintiff within the meaning of, and in violation of, Texas Penal Code § 20A.02(a)(2), (4), and (5), and § 20A.01(4), while she was trafficked at the Motel 6.

113.

As described above, the operation of the Motel 6 by Defendants was a venture which, through its operation of permissively allowing sex trafficking at its hotel in exchange for money, involved the trafficking of a child, Plaintiff, in violation of Texas Penal Code § 20A.02(a)(5) and (6).

114.

Defendants participated in the venture by: operating the Motel 6, which had an extensive history of pervasive crime and commercial sex activities, as previously alleged; renting rooms to Plaintiff's trafficker at the Motel 6 for days and weeks,

notwithstanding the red flags and signs it observed or should have observed demonstrating that Plaintiff was a minor victim of sex trafficking at the Motel 6, as previously alleged; engaging in ongoing business relations with Plaintiff's traffickers at the Motel 6 through rental of rooms for days and weeks and sale of goods, as previously alleged; being in direct association with Plaintiff's traffickers through repeated conversations and business transactions over days and weeks, as previously alleged. Plaintiff and Plaintiff's trafficker dealt with Defendants' staff at the Motel 6 repeatedly, Plaintiff's trafficker rented rooms at the hotel repeatedly to sex traffic Plaintiff, and Plaintiff and Plaintiff's trafficker bought goods and services repeatedly at the Motel 6, as previously alleged. In exchange, Defendants provided Plaintiffs' traffickers with, among other things, the rooms in which Plaintiff was victimized.

115.

Further, Defendants knew or should have known the venture benefitted from Plaintiff's trafficking because Defendants, and their employees, agents, and representatives, had repeated opportunities to observe Plaintiff and did observe Plaintiff, a minor, at the hotel, with and without her trafficker, and with other victims for a time. Further, Defendants, and their employees, agents, and representatives, had the opportunity to observe the signs of minor sex trafficking exhibited by Plaintiff, her trafficker's activities, the rooms in which Plaintiff was trafficked, and

the frequent traffic of adult male buyers to Plaintiff's rooms and to the hotel parking lot. Plaintiff talked to multiple employees, agents, and representatives of Defendants on multiple occasions at the Motel 6.

116.

Defendants intentionally and knowingly benefitted from the venture in which Plaintiff was trafficked by receiving a percentage of the revenue generated by the operation of the Motel 6 during the relevant period, including by receiving a percentage of the revenue generated from renting the rooms in which Plaintiff was trafficked.

117.

Defendants' acts and omissions were the but-for and proximate cause of Plaintiff's injuries and damages.

118.

Plaintiff has suffered substantial physical and psychological injuries as a result of being trafficked and sexually exploited at the Motel 6 in violation of Texas Penal Code § 20A.02(a).

119.

Plaintiff seeks exemplary damages from all Defendants.

120.

Defendants are jointly and severally liable for the entire amount of Plaintiff's damages arising from her trafficking. Tex. Civ. Prac. Rem. § 98.005.

121.

Texas law requires that Chapter 98 be liberally construed and applied to promote its underlying purpose to protect persons from human trafficking and provide adequate remedies to victims of human trafficking. Tex. Civ. Prac. Rem. § 98.006.

## **DAMAGES**

122.

Plaintiff incorporates Paragraphs 1 through 121 as if fully set forth herein.

123.

As a proximate and foreseeable result of Defendants' conduct and violations of the TVPRA and Texas Civil Practice and Remedies § 98.002, Plaintiff sustained personal injuries, mental and emotional pain and suffering, mental anguish, and other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Texas law against Defendants for injuries suffered in the incident at issue, and seeks to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Texas and federal law.

Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Texas and federal law, including, but not limited to:

a) Personal injuries;

b) Past, present, and future conscious pain and suffering;

c) Loss of enjoyment of life;

d) Medical expenses;

e) Mental anguish and emotional distress;

f) Loss of past, present, and future wages;

g) Incidental expenses;

h) All special, compensatory, economic, punitive, and other damages permissible under Texas law; and

i) Consequential damages to be proven at trial.

124.

Plaintiff is entitled to an award of punitive damages without limitation or cap because Defendants' actions and their employees, agents, and representatives were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

125.

Defendants' actions evidence a species of bad faith, were and are stubbornly

litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Texas and federal statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendants for the following:

a) Process issue as provided by law;

b) Plaintiff be awarded actual damages in amounts to be shown at trial from Defendants;

c) Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages from Defendants in accordance with the enlightened conscience of an impartial jury;

d) Plaintiff be awarded a trial by jury; and

e) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 11th day of March, 2024.

*/s/ Ron Estefan*
Ron Estefan
ron@ronestefanlaw.com
Texas Bar No. 00785851

THE ESTEFAN FIRM, P.C.
2306 Mason St.
Houston, TX 77006
(713) 333-1100 – Telephone

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing ***Plaintiff's Certificate of Interested Person*** has been prepared with one of the following font and point selections approved by the Court. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully Submitted,

*/s/ Ron Estefan*
Ron Estefan
ron@ronestefanlaw.com
Texas Bar No. 00785851

THE ESTEFAN FIRM, P.C.
2306 Mason St.
Houston, TX 77006
(713) 333-1100 – Telephone

One of the Attorneys for Plaintiff