**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

E.P.,

*Plaintiff*,

v.

G6 HOSPITALITY, LLC;
G6 HOSPITALITY PROPERTY, LLC;
MOTEL 6 OPERATING, L.P.

*Defendants*.

CIVIL ACTION NO. 4:24-cv-00216-MJT

**DEFENDANTS' MOTION TO STRIKE DECLARATIONS OF CALVIN KING, DERRICK FITZGERALD, AND EDWARD BESS AND TO PROHIBIT RELIANCE ON THEIR TESTIMONY**

Defendants G6 Hospitality, LLC, G6 Hospitality Property, LLC, and Motel 6 Operating, L.P. (collectively, "Defendants") hereby move to strike the declarations of Calvin King, Derrick Fitzgerald, and Edward Bess and prohibit reliance on their testimony.

This Court's Scheduling Order set Plaintiff's "[d]eadline to designate expert witnesses and reports" under Rule 702 as December 16, 2025. Dkt. 50 at 1; *see* Dkt. 90 at 1 (noting this deadline had "EXPIRED"). Aside from designating one witness's report on "sex trafficking" (which should be excluded, *see* Dkt. 78), Plaintiff failed to timely designate any expert reports. Yet months after the deadline lapsed, Plaintiff produced three declarations by law-enforcement officers who have no personal knowledge of Plaintiff's sex trafficking allegations but who purport to offer opinions as to the alleged visibility of unrelated criminal activity to Motel 6 staff during an unbound period of time. When asked to meet and confer about these late-disclosed expert declarations, Plaintiff suggested that these were purely "lay opinions" under Rule 701 and thus not subject to the Scheduling Order.

That is wrong. These declarations are clearly based on the officers' "specialized knowledge," Fed. R. Evid. 702, not lay-witness "perception," Fed. R. Evid. 701. If there were any doubt that they fall within Rule 702, their depositions have now dispelled it: all three officers admitted that they offered opinions based on their "specialized knowledge" arising out of their law-enforcement experience and training. *Id.* Because Plaintiff cannot disguise late expert opinions as lay declarations in this way, their testimony must be stricken. And in all events, Plaintiff should be prohibited from relying on this testimony because it flunks Rules 701, 702, and otherwise 403.

## BACKGROUND

On March 11, 2024, Plaintiff E.P. filed a two-count Complaint alleging liability under both federal and Texas state human trafficking laws. Dkt. 1. On April 29, 2025, this Court entered a

Scheduling Order in this case. Dkt. 50. In relevant part, the Court set a December 16, 2025, deadline for Plaintiff's expert reports, a February 2, 2026, deadline for Defendants' expert reports, and an April 2, 2026 deadline for the close of discovery. *Id.*; *see* Dkt. 90 (extending deadline only for summary judgment). In line with this Scheduling Order, Plaintiff disclosed a single expert on December 16, 2025. Dkt. 69. That expert, Naeshia McDowell, is a purported expert on trafficking—though the Defendants dispute her fitness to so testify. Dkt. 78.

Pursuant to the Court's scheduling order, on February 2, 2026, Defendants disclosed three experts. Among them is Timothy Kolonick. Dkt. 75. Mr. Kolonick is a former FBI agent with more than 27 years of law enforcement experience, much of which was focused on human trafficking. He was the lead agent in some of the nation's most high-profile human trafficking investigations and received commendations for his efforts in the same, and is therefore highly qualified to provide law enforcement's perspective on the sex trafficking issues relating to this case. He was retained to testify, from the perspective of a law enforcement expert on human trafficking, concerning the alleged visibility of E.P.'s alleged trafficking to Motel 6 staff.

Following the disclosure of Mr. Kolonick as an expert, Plaintiff's counsel acted quickly to shore up their apparent strategic error. On February 23, Plaintiff's counsel served, in connection with a settlement demand,[1] four signed declarations. Three of the four were signed by current or former police officers in the DeKalb County Police Department, which covers a portion of the greater Atlanta metro area (including Tucker, Georgia, where the subject property in this case was located).[2] These three declarations had all been signed by February 13, 2026. Over a month later,

[1] In acknowledgement of the confidential nature of those communications, Defendants will not attach them to this motion. However, Plaintiff's counsel confirmed the following day, on February 24, 2026, that Plaintiff intended to rely upon these declarations in the ordinary course of litigation, despite the manner in which they were provided to the Defendants.

[2] The fourth declaration was signed by a former employee of the subject property, who has repeatedly evaded service. Her declaration will be the subject of a separate motion to strike.

on March 28, 2026—just five days before the end of discovery—Plaintiff produced the declarations with Bates stamps in this litigation. Copies of each of the Bates-stamped versions are attached to this motion. *See* Exhibit A (Declaration of Calvin King), Exhibit B (Declaration of Derrick Fitzgerald), and Exhibit C (Declaration of Edward Bess).

Generally, the three declarations follow a similar pattern. Each begins by laying out the individual officer's position and experience with the DeKalb County Police Department. *See* Ex. A ¶¶ 2–3, Ex. B ¶¶ 2–3, Ex. C ¶¶ 2–3. Each states that the individual officer, as a result of his law enforcement experience, became "familiar" with the subject Motel 6. *See* Ex. A ¶ 15, Ex. B ¶ 8, Ex. C ¶ 5. All three say that the subject Motel 6 had substantial crime figures, though none gives any data to support the claim. *See* Ex. A ¶ 16, Ex. B ¶ 11, Ex. C ¶ 6. All three say that unspecified "girls and women" had engaged in commercial sex at the Motel 6. *See* Ex. A ¶ 18, Ex. B ¶ 12, Ex. C ¶ 13. All three opined on the adequacy of Motel 6's response to this purported crime problem. Ex. A ¶ 20, Ex. B ¶¶ 14–17, Ex. C ¶¶ 11–12. And all three end with a recitation of the numbers of paragraphs followed by an electronic signature. *See* Ex. A ¶ 21, Ex. B ¶ 19, Ex. C ¶ 14.

None of the three declarations is specific about what timeframe it covers other than to provide nearly identical vague time parameters. *See* Ex. A ¶ 18 ("At any given point in time"), Ex. B ¶ 12 ("At any given point in time"), Ex. C ¶ 13 ("At any given time"). None says anything about Plaintiff in this case. And none says anything about this Plaintiff's alleged traffickers. Instead, all speak in general terms to the supposed conditions at the subject property across an unspecified time period.

Defendants objected to these declarations as improper, belatedly disclosed experts. Plaintiff failed to withdraw the declarations, asserting they constituted lay opinion testimony. Skeptical, Defendants served subpoenas to testify on each of the three officers. In subsequent

depositions, each officer confirmed what the Defendants suspected all along: each relied on his specialized knowledge, training, and experience in law enforcement when signing these declarations, all of which were drafted by persons other than the signatories. *See* C. King Dep. Tr. (Exhibit D) at 80:19-81:6, 100:15-23; D. Fitzgerald Dep. Tr. (Exhibit E) at 40:3-5, 44:7-9, 46:3-6, 62:5-8; E. Bess Dep. Tr. (Exhibit F) at 25:10-24, 48:11-15.

Accordingly, Defendants move to exclude the officers' declarations and to prohibit reliance on their related testimony.

## ARGUMENT

Each officer's declaration is based on the declarant's specialized knowledge, experience, and training—in other words, each individual is used here as an expert witness. These expert disclosures were *months* late, and should be excluded on that basis alone. But each declaration in any event flunks Rules 701 *and* 702 and otherwise Rule 403 and should be excluded on these bases as well.

### I. The Declarations are Expert Opinions Masquerading as Personal Perceptions and Must Be Stricken On This Basis Alone.

Each individual declaration relies on "specialized knowledge," "skill, experience, training, or education." Fed. R. Evid. 702. It is therefore expert testimony, and subject to the deadlines, rules, and requirements thereof. And because the declarations were not timely disclosed, they must be stricken based on that reason alone.

**a.** "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quotation omitted). That is, "a lay opinion must be the product

of reasoning processes familiar to the average person in everyday life." *Id.* (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)). The three declarations produced here fail that test.

To start, Officer King was specifically asked by one of Plaintiff's attorneys "about *being an expert*" in another case for which counsel was representing an alleged sex trafficking victim. *See* Ex. D at 28:16-29:25 (emphasis added). The subsequent discussion Officer King had with counsel, Officer King testified, was instead about *this* case. *See id.* 30:1-14 ("[d]o you recall whether this conversation was related to your declaration in E.P., this case? A. It has to be. That's the only conversation it would be about."). But even putting that aside, each officer specifically declared and testified that he was relying on his specialized training, knowledge, and experience. Officer King declared that, beginning in 2015, he "served as the lead detective in the DeKalb County Vice Unit," Ex. A ¶ 3, that he "worked on over one hundred investigations relating to vice crimes," *id.* ¶ 4, that he has "participated in numerous trainings regarding sex crimes," *id.* ¶ 8, and that the declaration was based on this training and experience, *id.* ¶¶ 9 ("In my experience"), *id.*, ¶ 10 ("in my experience"), *id.*, ¶ 14 ("one of my responsibilities was"), *id.*, ¶ 15 ("In the course of carrying out those responsibilities").

In deposition testimony, Officer King was yet more explicit: "Q. Lieutenant King, the declaration that you submitted in this case is based on your more than 18 years experience in law enforcement; is that right? A. Yes. Q. It's also based on your specialized skill, knowledge, and training you've acquired over your nearly two decades working as a police officer? A. Yes." Ex. D at 100:15-23. Officer King also agreed that untrained civilians are not equipped to identify criminal activity, *id.* at 101:22-25, that law enforcement is specially trained to identify criminal

activity, *id.* at 102:5-8, and repeatedly agreed that his opinions were "based off of [his] specialized skills, knowledge, and training as a law enforcement officer," *id.* at 102:9-104:19.[3]

The testimony of Officer Fitzgerald and Mr. Bess was likewise based on specialized training, knowledge, and experience. Each declaration makes that much clear. *See, e.g.*, Ex. B ¶ 16 ("In my experience investigating hundreds of vice crimes"), *id.*, ¶ 17 ("In my experience investigating hundreds of vice crimes"), *id.*, ¶ 18 ("In my experience"); Ex. C ¶ 4 ("I was trained to do sting operations and surveillance operations for commercial sex crimes."), *id.*, ¶ 7 ("I was involved with and am aware of numerous investigations involving commercial sex crimes at Motel 6"). And each individual's deposition makes it yet *clearer* still. Officer Fitzgerald stated that his declaration was based on his nearly two decades of experience in law enforcement, Ex. E at 44:7-9, that law enforcement officers are "trained to recognize signs of criminal activity" and that he would "interpret" observations differently than the ordinary civilian "because of being in law enforcement for 20 years, experience" and because of his training, *id.* at 48:6-20, that he made "assumption[s]" based on his experience in forming his declaration, *id.* at 73:20-22 and that he went through "[s]pecialized training" to work in his chosen departments, *id.* at 46:13-18; 90:5-16.

Mr. Bess, meanwhile, testified affirmatively that "[m]y declaration is based on my – my knowledge and training and my underground experience dealing with these type of cases and with that hotel." Ex. F at 48:11-15. And Mr. Bess' experience is particularly relevant to showing the nature of his role in this case: he received specialized training as part of a task force and not only applied that specialized training to "help cross train other detectives" in the vice and narcotics units,

[3] In later questioning, Plaintiff's counsel elicited certain testimony regarding whether Officer King's opinions were based on "common sense." *See, e.g.*, Ex. D at 158:4-159:14. These answers were given pursuant to objections to the leading and/or compound nature of the questions asked and should not be considered by the Court.

*id.* at 39:7-11, but also used the specialized training himself in his role as a detective in the vice and narcotics units, *id.* at 39:9-40:4. And after he stepped down from the vice unit, Mr. Bess *taught* "the specialty classes" at the Police Academy, *id.* at 42:4-20—and to this day, Mr. Bess provides training on how to observe and report indicators of criminal behavior, *see id.* at 56:19-57:10.

As the declarations themselves and the deposition testimony make clear, each expert bases his opinions on specialized training, knowledge, and experience. Their inclusion or exclusion depends, therefore, on Rule 702 and the Rules and Scheduling Order regarding expert disclosures. *See Yanez Sosa*, 513 F.3d at 200 (emphasis in original) ("*any* part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701.").

**b.** Given that these are expert opinions, Plaintiff's failure to timely disclose the experts—and any report *at all*—before her December 16, 2025 expert deadline alone means she cannot rely on the declarations.

Exclusion is the "presumptive sanction" for late disclosure. *See Honey-Love v. United States*, 664 F. App'x 358, 362 (5th Cir. 2016) (citing Rule Fed. R. Civ. P. 37(c)(1)); *see also Johnson v. C. R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023) ("exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." (internal quotation omitted)). Indeed, the rules "incentive[iz]e … full disclosure" by prohibiting reliance on "expert testimony not so disclosed." *Honey-Love*, 664 F. App'x at 362 (quoting Fed. R. Civ. P. 26 Advisory Committee's Note (1993)). The Court should apply that presumptive sanction here because the declarations were produced well after and otherwise fail to meet Rule 26(a)(2)(B)'s requirements. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882–84 (5th Cir. 2004) (affirming exclusion of expert testimony based solely on two-month-

late disclosure); *see also, e.g.*, *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1347–50 (Fed. Cir.), *cert. denied*, 146 S. Ct. 187, (reversing district court for admitting expert testimony when expert had not filed expert report during discovery period); *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 952 (7th Cir. 2018) (finding exclusion of a misclassified expert witness proper even if the individual had been deposed as a fact witness because the defendant had "no reason to take discovery on [witness's] qualifications and expertise"); *Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distrib., Inc.*, 674 F. Supp. 3d 781, 790–91 (C.D. Cal. 2023) (excluding a late-designated expert whom the party initially classified as a lay witness).

## II. The Officers' Testimony Falls Short of Rule 702's Bar.

The officers' testimony must also be excluded under Rule 702 itself. Expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (citation omitted). District courts therefore serve an important gatekeeping function to exclude unreliable and irrelevant evidence under Federal Rule of Evidence 702. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, a party may not proffer expert testimony unless the party can "demonstrate[] to the court that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Courts often distill Rule 702 into three elements that the proponent must show by a preponderance of the evidence: (1) the expert must have sufficient "credentials"; (2) the

testimony must be "relevant"; and (3) the testimony must be "reliable." *Harris v. FedEx Corp. Servs, Inc.*, 92 F.4th 286, 303 (5th Cir. 2024).

***The testimony is irrelevant.*** As explained above, the existence of a "sex trafficking problem" generally, even if proven, does not move the needle on Plaintiff's claims. *See Jane Doe (S.R.C.) v. G6 Hosp. LLC*, 2024 WL 6998379, at *10 (E.D. Tex. Sept. 25, 2024). The TVPRA requires proof of knowledge as to the alleged venture that *trafficked Plaintiff*—not sex trafficking generally. *See id.* And "the TVPRA [otherwise] does not impose an affirmative duty to police and prevent sex trafficking." *E.M.B. v. G6 Hosp., LLC*, 2025 WL 2556106, at *16 (E.D. Tex. Apr. 23, 2025) (citation omitted). Here, the declarants all expressly disclaimed knowledge of the plaintiff. *See* Ex. D at 67:12-23 ("Q: Did you ask any questions about who the alleged sex traffickers were in this case? A. No."), Ex. E at 67:19-21 ("Q. To your knowledge did any of these investigations involve the plaintiff in this case? A. I'm not sure."). None claimed knowledge of the alleged trafficking venture at issue. *See* Ex. D at 57:15-17 ("A. Can I ask a question? Q. Yes. A. Who is E.P.?"), Ex. E at 11:6-9 ("Q. Do you know who EP is? A. No."), Ex. F at 11:12-15 ("Q. So you do not know the plaintiff in this case? A. No. … I'm not familiar with the person."); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 557 (7th Cir. 2023) (citing hotel cases and noting that where a complaint only alleges a venture between a hotel and victim's trafficker, "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture'").

***The testimony is unreliable.*** The testimony is also unreliable insofar as it purports to opine as to: (i) the frequency and concentration of criminal activity at a particular location without any facts, figures, or data to support the assumption, and (ii) the adequacy of Motel 6's responsive measures without any facts or data demonstrating what measures Motel 6 took. "An expert's opinion relies on *ipse dixit* when the opinion advances unproven and unsupported assertions that

rest solely on the expert's authority[;] … the requirement that the opinion be based on sufficient facts and data must be satisfied in every instance." *Thomas v. City of Port Arthur, Texas*, 2025 WL 474902, at *4 (E.D. Tex. Feb. 12, 2025). None of these experts cites any facts, figures, or data beyond what they claim to be personal experience. And Officer King's testimony, in particular, was not even based entirely on his *own* experience: he testified that his testimony that Motel 6 was a "hotspot for drug and commercial sex crimes" was based on "something that was pretty much verbally stated throughout the whole vice unit in reference to … the hottest hotels." Ex. D at 124:1-125:4. He also testified that he did not see any crime data relating to the Motel 6. *Id.* at 126:6-19.

Nor, for that matter, did any of these three individuals know anything about the security measures in place at the subject motel. *See Id.* at 146:8-11 ("Q. And do you know whether the G6 defendants hired off duty DeKalb County Police Department officers to work security at the Tucker Motel 6? A. No."), Ex. E at 81:20-23 ("Q. Are you aware that the Tucker Motel 6 had off-duty DeKalb County Police Department officers working security in 2014? A. No."), Ex. F at 87:1-6 ("Q. Do you know whether the Tucker Motel 6 contracted out for any private security in 2014? A. I'm not certain. Q. Do you know anything about the Tucker Motel 6's policies and procedures in 2014? A. No, sir."). Their opinions going to the security measures at the subject location—*see, e.g.*, Ex. A ¶ 10 ("the hotel did nothing to stop or prevent these sex crimes"); Ex. B ¶ 15 ("the hotel did not take measures to stop or prevent commercial sex crimes on the property")—are therefore unreliable. *E.M.B.*, 2025 WL 2556106, at *16 ("By failing to review G6's policies and procedures, Keyhan has no basis to claim that G6 did not adopt, implement, or enforce sufficient training, processes, or protocols for responding to prostitution or human trafficking on their properties." (internal quotation omitted)); *see id.* at *17 (noting in any event that "the TVPRA does not impose an affirmative duty to police and prevent sex trafficking").

These deficiencies all stem from a more fundamental discrepancy: these declarations were not produced in a form consistent with either Rule 26(a)(2)(B) or Rule 26(a)(2)(C). None of them include, for example, a list of reliance materials, which would help the Defendants—and the Court—understand the bases, if any, for their opinions. Nor do they identify, let alone provide a summary of the facts (e.g., crime data), their opinions are allegedly based on. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii). The individual declarations are deficient and unreliable for this reason, too, and should be struck on this independent ground. *See Williams v. BP Expl. & Prod., Inc.*, 2019 WL 6615504, at *4–8 (E.D. La. Dec. 5, 2019) (striking a revised report as untimely and also for failure to comply with Rule 26(a)(2)(B)); *see also supra* Part I.

## III. The Officers' Testimony Falls Short Even Under Rule 701.

The Court need not go beyond the question of whether the late disclosure of these experts should be countenanced, and need not go beyond the question of whether the testimony is reliable under Rule 702. But even if the Court were to find that some portion of the witnesses' declarations could qualify that witness to testify under Rule 701, the opinions should nonetheless be struck as outside the bounds of Rule 701.

A lay witness' opinion testimony must be rationally based on the witness' own perception. *See Windham v. Harris Cnty., Texas*, 875 F.3d 229, 242 (5th Cir. 2017) (quoting Fed. R. Evid. 701) ("lay opinion testimony must be 'rationally based on the witness's perception' and 'not based on ... specialized knowledge.'"). "[S]peculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible." *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993). And if opinions are "'based, even in part, on matters perceived by other agents and relayed to the witness,'" "such opinions are properly rejected as violative of the personal-knowledge requirement." *Hawkins v. Walsh*, 2018 WL 1463351, at *7 (N.D. Miss. Mar. 23, 2018).

These individuals all base their opinions at least in part on hearsay and speculation. As discussed above, none of them identify any facts or data supporting their opinions about the Motel 6. And Officer King expressly based a portion of his opinion on inadmissible hearsay. *See* Ex. D at 124:20-125:4 (Motel 6's "hotspot" status was "something that was pretty much verbally stated throughout the whole vice unit in reference to … the hottest hotels."). Officer Fitzgerald, meanwhile, said he visited the Motel 6, on average, approximately once per year in his 15 years as an undercover officer. *See* Ex. E at 27:16-17, 61:1-23, 70:15-71:2. And Mr. Bess, meanwhile, said that most of his experience with the Tucker Motel 6 was in the 2003 to 2008 time range—well before the 2014 alleged trafficking period at issue in this case. *See* Ex. F at 67:12-20.

## IV. The Officers' Testimony About Motel 6's Alleged Actions Otherwise Falls Short Under Rule 403.

The officers' testimony about Motel 6's actions—specifically, King's and Fitzgerald's testimony that Motel 6 did not employ measures to combat human trafficking "to [their] knowledge," Ex. A ¶ 20; Ex. B ¶¶ 14–15—should be excluded under Rule 403, which provides that evidence should be excluded if its "probative value is substantially outweighed by a danger of. . . unfair prejudice, [or] misleading the jury." Fed. R. Evid. 403. The risk of unfair prejudice and misleading the jury is particularly acute when expert opinions are involved. *United States v. Rider*, 94 F.4th 445, 456-57 (5th Cir. 2024) (finding testimony from a psychological expert that a defendant exhibited no markers of pedophilia was properly excluded under Rule 403 because the "jury may give the testimony undue consideration simply because it [came] from an expert"). The officers' testimony regarding Motel 6's purported response to human trafficking is as unhelpful and nonprobative as evidence can get: they say they do not know what the Motel 6 did. *See, e.g.,* Ex. D at 146:8-11; Ex. E at 81:20-23; Ex. F at 87:1-6. Indeed, they necessarily ignore all the

significant measures that Motel 6 took to combat human trafficking. *See E.M.B.*, 2025 WL 2556106, at *16–17.

Contrast that at-most minimal probative value with the unfair prejudice attributable to such testimony. The jury would hear testimony from law enforcement officers that Motel 6 "did nothing to stop or prevent [] sex crimes," Ex. A ¶ 20, and would be tempted to heavily weigh such testimony "simply because it [came] from an expert." *Rider*, 94 F.4th at 456-57. A jury could easily mistakenly give weight to this testimony about the officers' knowledge about Motel 6's actions. Rule 403 was designed to prevent the admission of such evidence and should bar that testimony here.

* * *

For these reasons, the G6 Defendants request that the Court strike the declarations of Calvin King, Derrick Fitzgerald, and Edward Bess and prohibit Plaintiff's reliance on their testimony.

Respectfully submitted this 20th day of April, 2026.

By: */s/ Bethany K. Biesenthal*

Andrew J. Clopton
Michigan Bar No. P80315
Laura Frantz
Michigan Bar No. P87814
JONES DAY
150 W. Jefferson Ave., Suite 2100
Detroit, MI 48226
T: 313.739.3939
F: 313.230.7997
lfrantz@jonesday.com
aclopton@jonesday.com

Bethany K. Biesenthal
Illinois Bar No. 6282529
Kristina K. Cercone
Illinois Bar No. 6306298
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
T: 312.269.1541
F: 312.782.8585
kcercone@jonesday.com
bbiesenthal@jonesday.com

*Counsel for the G6 Defendants*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), the undersigned certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that this motion is opposed. On March 13, 2026, Kristina Cercone, Laura Frantz, and Jacob Thackston, counsel for the Defendants conferred with David Bouchard and Nicole Archambualt, counsel for the Plaintiff. Counsel to the Defendants conveyed their position that the declarations at issue constitute improperly late-disclosed expert opinions. Counsel for the Plaintiff responded that he understood Defendants' position, stating he would likely file a similar motion if he was in Defendants' position, but believed that the at-issue declarations constituted lay opinion testimony. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ *Kristina K. Cercone*
Kristina K. Cercone

*Counsel for the G6 Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I electronically filed the foregoing Defendants' Motion to Strike using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record.

Dated: April 20, 2026

Respectfully submitted,

*/s/ Bethany K. Biesenthal*
Bethany K. Biesenthal