**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

E.P.,

*Plaintiff,*

v.

G6 HOSPITALITY, LLC;
G6 HOSPITALITY PROPERTY, LLC;
MOTEL 6 OPERATING L.P.,

*Defendants.*

CIVIL ACTION NO. 4:24-cv-00216

**G6 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE MERITS**

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF UNDISPUTED FACTS ........ 3

A. The G6 Defendants and the Tucker Motel 6 ........ 3

B. Plaintiff E.P. ........ 5

C. Plaintiff's Alleged Trafficking as Told in 2014 ........ 5

D. Plaintiff's Alleged Trafficking as Told During Litigation ........ 7

LEGAL STANDARD ........ 10

ARGUMENT ........ 11

I. Plaintiff's Central Allegations Are Conclusory and Otherwise Contradicted by the Evidence ........ 11

II. Plaintiff's Participant Claim Under the TVPRA Fails ........ 17

A. Defendants Did Not Participate in a Venture that Trafficked Plaintiff ........ 17

B. Defendants Did Not Knowingly Benefit from Participating in a Venture that Trafficked Plaintiff ........ 21

C. Defendants Neither Knew Nor Should Have Known About the Venture's Trafficking Violations ........ 21

III. Plaintiff's Claim Under Texas Civil Practice and Remedies Code § 98.002(a) Fails ........ 24

CONCLUSION ........ 27

## TABLE OF AUTHORITIES

### Cases


*A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257 (11th Cir. 2026) ........................................ 18, 19

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) .................................................... 10, 11, 21

*Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438 (5th Cir. 1987) ........................................ 18

*C.C. v. Rashid*, 2026 WL 252548 (D. Nev. Jan. 29, 2026) ........................................................ 26

*C.L.F. v. G6 Hosp., LLC*, 1:23-cv-00303(E.D. Tex. Dec. 8, 2024) ...................................... 19, 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 10

*Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316 (5th Cir. 1984) ......................... 18

*D.D.J. v. G6 Hosp., LLC*, 1:23-cv-00269 (E.D. Tex. Sept. 30, 2024) ............................ 20, 22, 24

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) .............................................. 17, 19

*K.E.C. v. G6 Hosp., LLC*, 750 F. Supp. 3d 719 (E.D. Tex. 2024) .................................. 17, 21, 22

*S.A.S. v. Hilton Domestic Operating Co. Inc.*, 795 F. Supp. 3d 1294 (W.D. Wash. 2025) 16, 19, 20

*S.M.A. v. Salesforce, Inc.*, 2025 WL 888433 (N.D. Tex. Mar. 21, 2025) .................................. 26

*Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) .................................................................. 21

*Doe No. 1 v. Rajveer LLC*, 2025 WL 907890 (M.D. Ala. Mar. 25, 2025) ....................... 22, 25, 26

*F.F. v. G6 Hospitality Property LLC*, No. 1:25-cv-00029 (E.D. Tex. Mar. 6, 2026) .................. 19

*G.G. v. Salesforce.com Inc.*, 76 F.4th 544 (7th Cir. 2023) .................................................. 18, 22

*G.M.F. v. G6 Hosp., LLC*, 1:23-cv-00280 (E.D. Tex. Sept. 26, 2024) ....................................... 20

*G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243 (N.D. Ga. 2024) .................................. 18

*Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107 (9th Cir. 2003) ..................................... 12, 13

*Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) ................................................................... 18

*In re Buescher*, 783 F.3d 302 (5th Cir. 2015) ........................................................................... 13

*In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021) ............................................................... 26, 27

*Israel v. LSK Enters., Inc.*, 2017 WL 3671373 (E.D. Tex. July 18, 2017) .... 11

*Johnson v. Geovera Specialty Ins. Co.*, 657 F. App'x 301 (5th Cir. 2016) .... 10

*Jones v. Castro*, 2007 WL 3396500 (W.D. Tex. Nov. 13, 2007) .... 14

*K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780 (5th Cir. 2017) .... 12, 13

*L.M. v. 42 Raleigh, LLC*, 2024 WL 4204906 (E.D.N.C. Sept. 16, 2024) .... 22

*Legacy Housing Corp. v. City of Horseshoe Bay, Texas*, 158 F.4th 636 (5th Cir. 2025) .... 14

*Lydia K. v. G6 Hosp. Franchising LLC*, 2026 WL 370057 (N.D. Tex. Feb. 10, 2026) .... 25, 26

*Mata v. S. San Antonio Indep. Sch. Dist.*, 7 F.3d 230 (5th Cir. 1993) .... 11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .... 17

*McFaul v. Valenzuela*, 684 F.3d 564 (5th Cir. 2012) .... 10, 23

*Neria v. Disk Network LLC*, 2020 WL 3403074 (W.D. Tex. June 19, 2020) .... 16

*R.B. v. G6 Hosp.*, LLC, 1:23-cv-00286 (E.D. Tex. Sept. 26, 2024) .... 20

*R.C. v. Choice Hotels Int'l, Inc.*, 2024 WL 1443412 (N.D. Ohio Apr. 2, 2024) .... 18

*Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270 (4th Cir. 2024) .... 22

*Rogers v. Bromac Title Servs. LLC*, 755 F.3d 347 (5th Cir. 2014) .... 10

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) .... 12

*Scott v. Harris*, 550 U.S. 372 (2007) .... 10, 13, 14

*Tiblier v. Dlabal*, 743 F.3d 1004 (5th Cir. 2014) .... 10

*Tyla D. v. MGM Resorts Int'l*, 2024 WL 4839744 (D. Nev. Nov. 19, 2024) .... 18

*Vinewood Capital v. Dar Al-Maal As-Islami Trust*, 541 F. App'x 443 (5th Cir. 2013) .... 14, 16

**STATUTES**

18 U.S.C. § 1595(a) .... passim

18 U.S.C. § 1591 .... 2, 3, 22, 23

20 U.S.C. § 1681(a) .......... 11

42 U.S.C. § 2000e-2.......... 12

Tex. Civ. Prac. Rem. Code § 16.0045(b)(3) .......... 24

Tex. Penal Code § 20A.01(4) .......... 25

Texas Civil Practice and Remedies § 98.002 .......... 3, 24, 25

**OTHER AUTHORITIES**

Black's Law Dictionary (6th ed. 1990) .......... 22

Merriam-Webster Dictionary .......... 25

**RULES**

Fed. R. Civ. P. 56(a) .......... 10

Fed. R. Civ. P. 56(e) .......... 11

Fed. R. Evid. 803(7)(b) .......... 16

Defendants G6 Hospitality LLC, G6 Hospitality Property LLC, and Motel 6 Operating L.P. (collectively "Defendants") respectfully move this Court to enter an order granting summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.

## INTRODUCTION

Plaintiff E.P. claims that she was repeatedly trafficked at a Motel 6 in Tucker, Georgia, during the spring of 2014 by her boyfriend-turned-trafficker, Chandan Price. Plaintiff has not sought to hold Price liable. Instead, Plaintiff sues Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and Chapter 98 of the Texas Civil Practice and Remedies Code for knowingly participating in a "venture" that trafficked her.

But no reasonable jury could find in Plaintiff's favor. To begin, Plaintiff's story is much too vague to credit. She cannot even identify all the specific days when she was allegedly at the Tucker Motel 6—or even one specific trafficking violation or interaction with hotel staff.

Worse, discovery has utterly refuted whatever part of her story can be credited. Plaintiff's claim that she was trafficked at the Tucker Motel 6 is blatantly contradicted by her own contemporaneous forensic interview, which makes clear that she was staying at an entirely different property. Back in 2014, just weeks after the alleged trafficking period, Plaintiff told investigators that she had stayed in a motel off Wesley Chapel Road and Snapfinger Road, across the street from an "Economy Lodge"—a description that perfectly matches the now-defunct Rite 4 US Inn, not the Tucker Motel 6.[1] Plaintiff's explanation for the discrepancy—that she lied about the property in order to protect Price—is entirely incoherent, given that she incriminated Price elsewhere in the interview. No reasonable jury could accept this excuse.

---

[1] The original Complaint contains an errant "Inn" in paragraph 29, suggesting Plaintiff may have planned to sue the Rite 4 US Inn before realizing it had dissolved. Complaint at ¶ 29, Dkt. 1 ("by allowing rooms at the hotel ***Inn*** to be rented to traffickers and pimps") (emphasis added).

Worse still, Defendants' comprehensive search of their room records turned up just a single, three-night reservation in Price's name—with Price as the only registered guest. Even assuming that Plaintiff was with him at the time (which the records do not corroborate), Defendants could not have participated in a "venture" with an individual who stayed at their hotel once for three nights. After all, as this Court recently confirmed in granting summary judgment in favor of a hotel defendant, "participation in a venture" requires "*repeated* interactions" between the hotel and the trafficker. *T.D.B. v. G6 Hosp., LLC*, 9:23-cv-00174, Dkt. 164 at 7 (E.D. Tex. Apr. 6, 2026).

Plaintiff fares no better under the remaining elements. Defendants did not "knowingly benefit" from their participation in an unlawful venture merely by receiving less than $150 from an arms-length transaction with a trafficker—an amount that is far outstripped by G6 Hospitality LLC's expenditures on *anti-trafficking* measures. Further, Plaintiff has not proven that Defendants had actual or constructive knowledge that the "venture" "engaged in an act in violation of this chapter" (here, 18 U.S.C. § 1591). That is, Plaintiff has no evidence that Defendants knew or should have known of her trafficking. There is no indication in the record that motel staff knew or should have known that Plaintiff was being held against her will at the motel. And motel staff would have had no reason to believe that Plaintiff was a minor being caused to engage in commercial sex, as she does not claim that her trafficker ever accompanied her in public areas of the hotel or that her commercial sex activity was visible to employees.

Defendants categorically condemn human trafficking in all its forms. But Plaintiff bears the burden to back up her claims with probative evidence. And she cannot rest on testimony that is contradicted by the record evidence. While Plaintiff surely hopes that the Court will view this underdeveloped record as one for the jury to clean up, it is her burden to raise a triable issue in the first place. She has failed to do so on multiple elements, and thus, summary judgment is warranted.

## STATEMENT OF THE ISSUES

1. Whether there is a genuine dispute of material fact as to whether Defendants participated in a venture that trafficked Plaintiff, as needed to assert a participant claim under the TVPRA.

2. Whether there is a genuine dispute of material fact as to whether Defendants knowingly received a benefit from participating in a venture, as needed to assert a participant claim under the TVPRA.

3. Whether there is a genuine dispute of material fact as to whether Defendants knew or should have known that the alleged venture committed a violation of 18 U.S.C. § 1591 against Plaintiff, as needed to assert a participant claim under the TVPRA.

4. Whether there is a genuine dispute of material fact as to whether Defendants violated Texas Civil Practice and Remedies § 98.002.

## STATEMENT OF UNDISPUTED FACTS

### A. The G6 Defendants and the Tucker Motel 6.

Plaintiff E.P. alleges she was trafficked at a Motel 6 located at 2810 Lawrenceville Highway in Tucker, Georgia ("Tucker Motel 6") for a few months in early 2014. First Am. Compl. ("FAC") ¶ 1, Dkt. 65. The Defendants are entities that served different roles with respect to the Tucker Motel 6. G6 Hospitality Property LLC owned, but did not operate, the Tucker Motel 6. Ex. B, Perry Ping Dep. Tr. ("Ping Tr.") at 49:2–6. G6 Hospitality LLC employed corporate-level employees and operated the Tucker Motel 6. It was responsible for activities such as issuing policies and developing trainings. *Id.* at 32:23–38:9. Motel 6 Operating LP employed the employees who worked at the Tucker Motel 6, including the General Manager and the front-desk clerks. *Id.* at 55:15–21.

G6 Hospitality LLC issued safety and security policies that applied to owned and operated Motel 6 properties, such as the Tucker Motel 6. *Id.* at 32:23–38:9. The policies in place during the alleged trafficking period were designed to identify and limit crime—including commercial sex of any nature. Ex. C, Safety Resource Manual, at G6_EP0000226. They directed employees at the Tucker Motel 6 to be the "'eyes and ears' of the property" and were intended to "create[] an atmosphere of around-the-clock security awareness." *Id.* at G6_EP0000162. They included check-in procedures that mandated guest identities and ages be verified before issuing room keys and a process for banning guests engaged in misconduct from renting at the property. *Id.* at G6_EP0000167–171, 215. They also encouraged employees to maintain positive relationships with local law enforcement. *Id.* at G6_EP0000235.

In addition, G6 Hospitality LLC invested in a comprehensive security system operated and monitored by a third-party security company, Westec Intelligent Surveillance. Ex. D, Westec Proposal; Ex. E, Sean Walker Dep. Tr. ("Walker Tr.") at 49:23–50:20; 51:4–52:15. The Tucker Motel 6 had a Westec security camera and two-way speaker system strategically placed around the property. *Id.* Security personnel from Westec would remotely monitor the security cameras, conduct virtual tours of the property multiple times per day, and could alert law enforcement if any disruptive or potentially illegal activity occurred. *Id.* Further, the Tucker Motel 6 hired off-duty DeKalb County Police Department officers to provide security at the property. Ex. F, March 2014 M6/S6 – Security Guard Review Report, at 9; Ex. G, Victor Glover Dep. Tr. ("Glover Tr.") at 177:21–23; 54:2–8 (noting that off-duty officers "are more highly trained and, in a lot of cases, far more responsible than a regular contract guard company"). In 2014 alone, the Tucker Motel 6 budgeted nearly $55,000 for security. Ex. F at 9.

**B. Plaintiff E.P.**

Plaintiff is a [redacted]-year-old woman who lives in [redacted] with her parents and son. Ex. H, Plaintiff E.P. Dep. Tr. ("E.P. Tr.") at 21:14–22:3. Plaintiff had a difficult and "very chaotic" childhood—her parents were "very verbally, mentally, and physically abusive" both to her and to each other. *Id.* at 78:12–80:1. Plaintiff described numerous violent incidents she experienced growing up, including her father "bust[ing] her ear drum," being "dragged up wooden stairs," "tackled," and "spit on," and having "things broken on [her]." *Id.* at 83:3–20. In response to her volatile home life, Plaintiff began running away. *Id.* at 85:9–20. Plaintiff started running away in the middle of 2013, when she was just 13-years old, and estimates she ran away as many as ten times. *Id.* at 85:12–18, 91:4–12. Around the same time, Plaintiff also began using marijuana recreationally. *Id.* at 91:24–92:17. Plaintiff met her alleged trafficker in 2014 during a period in which she had run away from home. *Id.* at 151:18–152:3, 94:8–15, 127:3–8. Plaintiff alleges that she was trafficked for several years in Georgia, Florida, and Massachusetts, but her allegations against Defendants are limited to approximately two months in early 2014. *Id.* at 153:25–158:18.

**C. Plaintiff's Alleged Trafficking as Told in 2014.**

Over a decade ago, on June 20, 2014, a few weeks after Plaintiff's alleged trafficking at issue ended, Plaintiff participated in a forensic interview with the Georgia Center for Child Advocacy. Ex. I, Forensic Interview Synopsis. During this interview, Plaintiff reported the following:

Sometime in January 2014, Plaintiff ran away from home and became acquainted with a person known as "Tight." Ex. A, Plaintiff's Forensic Interview, at 12:42:06–12:42:47, 12:44:10–12:44:23, 1:24:42–1:26:10. Plaintiff would hang out at Tight's apartment with his friends, including Chandan Price ("Price"). *Id.* at 12:42:06–12:42:47, 12:51:50–12:52:05, 1:24:42–1:26:10; Ex. J, March 31, 2025 identity disclosure email (truncated) (confirming that Bonz—who is

referenced in the forensic interview—is an alias for Price. During this time, Plaintiff also became friends with another person known as "Angel" and later decided to stay with her. Ex. A, at 12:44:10–12:46:23.

At that time, Angel was living with her two young daughters in a "blue" "little motel" with "doors on the outside" just off the freeway exit of "Wesley Chapel Snapfinger" and across the street from another property Plaintiff believed to be called the "Economy Lodge."[2] *Id.* at 12:45:02–12:46:23, 1:32:08–1:34:48, 1:44:53–1:45:30. To support herself and her children, Angel was engaging in commercial sex and taught Plaintiff how to do the same. *Id.* at 12:45:02–12:46:40. During this time, Plaintiff also met a woman named Amber Millwood, who posted Plaintiff's number on Backpage.[3] *Id.* at 12:47:27–12:48:38, 1:49:30–1:50:12. Thereafter, Plaintiff also used Backpage to find dates. *Id.* at 1:52:50–1:54:42. While staying with Angel, Plaintiff reported that she was "still having a normal life" and leaving the property frequently to hang out with friends, including Price. *Id.* at 12:49:37–12:49:50. Plaintiff said her friends did not know what she was doing and believed Plaintiff was being paid to babysit Angel's children. *Id.* at 12:50:34–12:51:06. At some point, Angel began stealing money from Plaintiff. *Id.* at 12:49:33–12:49:37. Plaintiff told Price about the theft, and Price offered for Plaintiff to live with him. *Id.* at 12:49:50–12:51:45.

---

[2] In 2014, there was a motel with a blue roof and blue exterior doors off the I-285 exit at Wesley Chapel Road and Snapfinger Road across the street from an Economy Inn. But that motel was *not* the Tucker Motel 6. It was the now-defunct Rite 4 US Inn. Ex. K, Kristina Cercone Decl. "Cercone Decl." at ¶ 4–9.

[3] Despite Plaintiff's testimony that Millwood posted Plaintiff's number on Backpage (*i.e.*, trafficked Plaintiff) (*see* E.P. Tr. at 128:20–23; 226:8–10), Plaintiff's counsel injected Millwood into this action by convincing Millwood to sign a declaration that Plaintiff's counsel drafted. Plaintiff's counsel from Andersen, Tate & Carr, P.C. entered into an attorney-client relationship with Millwood to secure the declaration and represented Millwood at her deposition, while simultaneously representing Plaintiff. Counsel's conduct is the subject of a separate motion to compel and show cause filed in the district where Millwood's deposition took place. But at Millwood's deposition in this case, when asked about whether she posted Plaintiff's number on Backpage, Millwood vehemently denied doing so and accused Plaintiff of lying under oath. Ex. L, Amber Millwood Dep. Tr. ("Millwood Tr.") at 116:21–117:16.

Plaintiff then lived with Price at his home. *Id.* at 12:52:08–12:54:14, 2:05:35–2:06:55. During this time, Price cared for Plaintiff "like a boyfriend." *Id.* at 12:52:39–12:53:27. After a few weeks, Price planned a trip to Florida, and Plaintiff went with him. *Id.* Plaintiff did not want to keep living off of Price, so she began posting on Backpage and seeing dates in Florida. *Id.* at 12:53:45–12:54:00. Price would drive Plaintiff to these dates, though Plaintiff told Price she was seeing friends. *Id.* at 12:55:33–12:56:14. Plaintiff reported that she and Price also had intercourse on several occasions in Florida. *Id.* at 2:13:02–2:13:40. Then, on June 3, 2014, about a month and half after Plaintiff arrived in Florida, the Orlando Police Department recovered Plaintiff while she was returning to her hotel following a date. *Id.* at 12:53:32–12:53:55, 12:57:10–1:13:30.

### D. Plaintiff's Alleged Trafficking as Told During Litigation.

Throughout the more than two-hour long forensic interview conducted in June 2014, Plaintiff identified multiple locations where she was allegedly trafficked, but never once mentioned the Tucker Motel 6. *See* Ex. A. In fact, the hotel off of Wesley Chapel and Snapfinger—the now-defunct Rite 4 US Inn—was the *only* hotel location in Georgia where she claimed to have been trafficked. *Id.*

In this litigation, however, Plaintiff has alleged that she was trafficked at the *Tucker Motel 6* in early 2014. And Plaintiff identifies Chandan Price as her alleged trafficker. FAC ¶¶ 33, 47; Ex. J (providing Plaintiff's trafficker information pursuant to the Court's initial Protective Order, *see* Dkt. 37 at Section VI.B); *see also* Ex. M, Plt.'s First Supp. Initial Disclosures at 1 (only naming Price as a trafficker). At her November 2025 deposition, Plaintiff testified as follows:

Plaintiff affirmed much of the information she provided in her 2014 forensic interview, including leaving home, staying with friends, and the general timeline from runaway to recovery. E.P. Tr. at 85:19–86:10; 91:13–19; 121:19–24. However, despite describing the Rite 4 Us Inn during her 2014 forensic interview, Plaintiff testified that she was actually trafficked at the *Tucker*

*Motel 6* from mid-February to mid- to late-April, when she left for Florida. *Id.* at 155:6–15; 157:3–11; 160:20–23. Plaintiff testified that initially a person named "Angel" introduced her to "commercial sex" at the hotel. *Id.* at 126:5–127:17; 136:12–23. Thereafter, and relevant here, Plaintiff testified that Price trafficked her for the first time ever in mid-March 2014 when he made Plaintiff have sex with two individuals in a car in a garage, though Plaintiff does not know whether the individuals paid Price. *Id.* at 123:2–124:19. Around the same time, and also away from the Tucker Motel 6, Price made Plaintiff have sex with him and his brother. *Id.* Plaintiff testified the first time Price trafficked her at the Tucker Motel 6 was on March 31, 2014. *Id.* at 125:19–22. There is a stay record for Price at the Tucker Motel 6 from March 31 to April 3, 2014.[4] Ex. O, Sean Walker Decl. ("Walker Decl.") at Ex. 1A. The reservation lists Price as the only registered guest. *Id.* Plaintiff alleges Price continued to traffic her at the Tucker Motel 6 until the middle or end of April 2014.[5] E.P. Tr. at 157:3–11; 160:14–23.

Plaintiff testified that Price would handle the check-in process at the Tucker Motel 6. *Id.* at 160:24–161:7. However, on one occasion, Price asked Plaintiff to extend a reservation that was in his name because he was away from the property and she did so. *Id.* at 162:6–24. According to Plaintiff, she paid in cash and was not required to show identification or verify her age. *Id.* Plaintiff also testified that she deactivated her key card on an "almost like a daily basis" and would visit the front desk to reactivate it while wearing "kind of skimpy, scandalous clothes." *Id.* at 163:12–21,

---

[4] Plaintiff testified at her November 6, 2025 deposition that "documents produced in discovery helped [her] to refine the time period of [her alleged] trafficking." E.P. Tr. at 138:24–139:10. Ahead of her deposition, on August 8, 2025, G6 Hospitality LLC produced the single stay record for Chandan Price at the Tucker Motel 6. Ex. N, August 8, 2025 production cover letter.

[5] Plaintiff testified that she did not leave the Tucker Motel 6 after March 31, 2014 until she went to Florida. E.P. Tr. at 160:1–23. This is untrue. Plaintiff, who used the alias [redacted] (E.P. Tr. at 16:2–3), was caught shoplifting at a Publix in Lithonia, Georgia (10 minutes away from the Rite 4 US Inn) on April 3, 2014. Ex. P, DeKalb County Police Dept. Incident Report, EP-010016; E.P. Tr. at 17:10–17.

169:8–13. Plaintiff would also interact with housekeeping, requesting fresh towels and allowing them to empty the trash can and take dirty towels out of her room. *Id.* at 166:23–167:7. Price would generally be at the property with Plaintiff and would wait in the car while she was with dates before returning to the room. *Id.* at 176:5–24.

Plaintiff affirmed that she and Price traveled to Florida in the middle or end of April 2014, and Plaintiff was recovered by law enforcement in Florida on June 3, 2014. *Id.* at 232:20–233:1. Plaintiff reconnected with Price after Christmas in 2014 and lived with him for several years. *Id.* at 53:9–23; 56:7–17. Plaintiff also alleges that Price continued to traffic her in Georgia, Florida, and Massachusetts—but never again at the Tucker Motel 6. *Id.* at 153:25–158:18.

* * *

Faced with these contradictory accounts, Defendants conducted a comprehensive search of their room-rental records, and identified no stay records for Plaintiff (or "Angel") at the Tucker Motel 6 during the alleged trafficking period. Walker Decl. ¶¶ 6–8. And there is only a single three-night stay record for Chandan Price at the Tucker Motel during the relevant time. *Id.* at ¶ 9. That reservation lists only one registered guest. *Id.* at Ex. 1A. There is no documentary evidence that Plaintiff was ever present at, let alone trafficked at, the Tucker Motel 6. There is no documentary evidence that any employee at the Tucker Motel 6 was ever aware of Plaintiff's presence at the property. Indeed, the General Manager of the Tucker Motel 6 testified that she did not recognize Plaintiff and that, in her view, Plaintiff "would've stood out right away" if she were present at the Tucker Motel 6. Ex. Q, Veena Primm Dep. Tr. ("Primm Tr.") at 133:4–134:16.

## LEGAL STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rogers v. Bromac Title Servs. LLC*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and, thus "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Johnson v. Geovera Specialty Ins. Co.*, 657 F. App'x 301, 303 (5th Cir. 2016) (quoting *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)).

Defendants are not required to prove a negative. They can meet their burden on summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" after the close of fact discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). And although the Court "construes 'all facts and inferences in the light most favorable to the nonmoving party[,]' [s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (citation omitted). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ARGUMENT

### I. Plaintiff's Central Allegations Are Conclusory and Otherwise Contradicted by the Evidence.

Plaintiff testified that she was trafficked at the Tucker Motel 6 from mid-February to the middle or the end of April 2014, claiming that during this period, she never lived anywhere but the Tucker Motel 6. E.P. Tr. at 139:11–14; 158:3–5; 159:16–160:23; 232:19–23. But the evidence in the record with respect to Plaintiff's purported trafficking at the Tucker Motel 6 is simply insufficient to support her claims.

**A.** To begin, Plaintiff's conclusory testimony comes nowhere close to creating a genuine issue at the summary-judgment stage. Rule 56 requires specific facts sufficient to sustain a plaintiff's claim. Fed. R. Civ. P. 56(e). A "genuine issue" of material fact therefore does not exist where the only evidence to support a plaintiff's claims amounts to "bald and conclusionary statements." *Mata v. S. San Antonio Indep. Sch. Dist.*, 7 F.3d 230, 230 (5th Cir. 1993). Instead, the plaintiff must present "'significant probative evidence' on which a jury could reasonably find for [her]." *Israel v. LSK Enters., Inc.*, 2017 WL 3671373, at *1 (E.D. Tex. July 18, 2017) (quoting *Liberty Lobby*, 477 U.S. 242, 256 (1986)).

Two illustrations prove the point. Take Title IX claims. Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). But a plaintiff does not meet his burden at summary judgment, for example, by declaring that "he was harassed 'repeatedly,' 'constantly,' and 'almost every day'" over the course of a semester and went to the principal's office "'one to two times a week' to report various types of harassment." *K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 785 & n.6 (5th Cir.

2017). The failure to provide any detail about "specific incidents" meant that his declaration was too "vague" and "conclusory" to "defeat summary judgment." *Id.*

And take Title VII claims. Title VII provides that an employer may not engage in "an unlawful employment practice." 42 U.S.C. § 2000e-2. But a plaintiff does not meet her burden at summary judgment, for example, by declaring that unlawful "incidents occurred" in "'late 1998' or 1999." *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003). The failure to even offer any "specific dates for any of the actions" means that she, too, has offered nothing more than "conclusory allegations" that are "insufficient to survive a motion for summary judgment." *Id.*

TVPRA claims require no less. The TVPRA permits a "victim of a violation" of the criminal trafficking chapter to sue a defendant who "knowingly benefit[ed] … from participation in a venture which [it] knew or should have known has engaged in an act in violation" of that chapter. 18 U.S.C. § 1595(a). But obviously that requires a plaintiff to point to the specific criminal "act[s] in violation of this chapter" that the "specific" "venture" "engaged in." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (quoting 18 U.S.C. § 1595(a)).

Here, however, when asked to identify "[h]ow many days [that she] stay[ed] at the Tucker Motel 6 related to [her] trafficking," she said "couldn't tell you exactly how many days [she] stayed there." E.P. Tr. at 159:16–21. She said she could only give "an approximate time frame," but even that varied throughout the deposition. *Id.* At one point, she testified that her trafficking at the Tucker Motel 6 occurred "from like mid-February all the way until middle of May, maybe beginning of like April, somewhere middle of May—end of—middle of May, end of May, from the beginning to middle of—beginning and middle of February." *Id.* at 155:10–15. But elsewhere, she testified that she left for Florida—and thus left the Tucker Motel 6—in the "middle of April, end of April." *Id.* at 232:20–22. At her *most* specific, then, she claims she was trafficked

at the Tucker Motel 6 between mid-February and mid- to late-April. This would not be enough in any context at summary judgment. *See, e.g.*, *K.S.*, 689 F. App'x at 785 & n.6 (plaintiff's testimony that he was harassed "repeatedly" during a semester was too "conclusory"); *Hernandez*, 343 F.3d at 1116 (plaintiff's testimony that unlawful "incidents occurred" in "'late 1998' or 1999" was too "conclusory").

While Plaintiff was able to identify one particular set of dates within that range—"March 31st to [April] 3rd," E.P. Tr. at 161:16–17—this conveniently matched the only room rental record produced by G6 Hospitality LLC in this case, a record that makes no mention of her presence on the property. And even within that date range, Plaintiff did not testify about any specific trafficking incident or interaction that she had with hotel staff. Indeed, Plaintiff testified that she "d[idn't] remember" the "people at the front desk," other than that "they were Indian" and "maybe … a man and a woman." *Id.* at 164:3–166:22. She could not identify what they were wearing, any "notable facial features," or anything else about their "physical appearance." *Id.* Nor could she describe any particular interaction she had with front desk staff or housekeeping in any detail. *Id.*

Therefore, Plaintiff's conclusory testimony does not suffice to establish that she was ever trafficked at the Tucker Motel 6.

**B.** Even assuming that Plaintiff's claims are not too conclusory, they are otherwise contradicted by the record. Though the Court must ordinarily view the facts "in the light most favorable to the nonmoving party," it "should not adopt [non-movant's] version of the facts for purposes of ruling on a motion for summary judgment" when it is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380; *accord In re Buescher*, 783 F.3d 302, 308 (5th Cir. 2015) ("[A] party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the

opposite scenario."). For instance, in *Vinewood Capital v. Dar Al-Maal As-Islami Trust*, the court held that the plaintiff's principal's "self-serving testimony" that an oral contract existed was "insufficient to create an issue of fact" where it was "belied by the parties' contemporaneous written communications and written agreements." 541 F. App'x 443, 448 (5th Cir. 2013). Likewise, in *Legacy Housing Corp. v. City of Horseshoe Bay, Tex.*, the court held that the "record flatly refutes" a plaintiff's claim that a road it had built was "an innocent 'driveway,'" because the plaintiff had previously "advertised" it as a "highway" "access" in violation of restrictions on the land. 158 F.4th 636, 648 (5th Cir. 2025) (citing *Scott*, 550 U.S. at 380). And in *Jones v. Castro*, the court refused to credit the plaintiff's claim that "he suffered an injury or was denied medical care" where his "medical records" revealed that "the medical staff concluded he was not injured, and [plaintiff] denied he was injured." 2007 WL 3396500, at *3 (W.D. Tex. Nov. 13, 2007) (citing *Scott*, 550 U.S. at 380).

Here, Plaintiff's version of events is blatantly contradicted and unsupported by the record in two respects.

*First*, Plaintiff's testimony that she was trafficked at the Tucker Motel 6 is flatly inconsistent with Plaintiff's recounting of events during her 2014 investigatory interview, just after the alleged trafficking period concluded. In that interview, Plaintiff explained that she was trafficked at only *one* hotel in Georgia: a motel off of "Wesley Chapel Snapfinger," across the street from an "Economy Lodge" or something similar. Ex. A at 12:45:02–12:46:23; 1:32:08–1:34:48; 1:44:53–1:45:30. In 2014, the now-defunct Rite 4 US Inn—*not the Tucker Motel 6*—was right off the exit at Wesley Chapel Road and Snapfinger Road and sat across the street from an Economy Inn. Cercone Decl. at ¶ 4–9. As a map from the Plaintiff-produced records shows, the Tucker Motel 6 is nowhere close to the motel Plaintiff described in her 2014 forensic interview:




Ex. 6 to Ex K. at EP-000007 (yellow stars added for identification purposes).

Plaintiff's attempt to explain this contradiction, and to cast doubt on the veracity of her earlier claims (while nevertheless reaffirming the rest of the interview's account), falls flat. Plaintiff testified that she lied about the location of the hotel during the 2014 interview in order to "protect Chandan [Price]." E.P. Tr. at 104:23–105:17. Plaintiff claimed that she was worried "[t]hey would find cameras" such that they "would find evidence of us being there" that they could use "against [Price]." *Id.* at 113:14–23. Because she "didn't want anything to happen to him," Plaintiff contended that she described the wrong motel. *Id.* But this post-hoc justification is utterly

incoherent and cannot be credited in light of the 2014 interview as a whole. During the interview, she identified Price by nickname, provided identifying details, and incriminated him by admitting that they engaged in sex acts that would be illegal given their age difference, rendering implausible her later assertion that she lied about the location of her trafficking in order to protect Price. Ex. A at 2:13:02–2:13:40. What's more, Plaintiff admitted later in her deposition that she did not recall seeing security cameras at the Tucker Motel 6, so it is unclear why she would have been worried about anyone finding security footage of Price. E.P. Tr. at 175:14–176:4.

Just as in *Vinewood Capital*, *Legacy Housing*, and *Jones*, Plaintiff's prior representation (as reflected in the contemporaneous record evidence) about the location of her trafficking flatly contradicts her current testimony. Thus, Plaintiff's "conclusory allegation[]" that she was at the Tucker Motel 6, "without probative evidence to support the claim," is "insufficient to defeat a motion for summary judgment," particularly where the record "evidence supports the opposite scenario." *Vinewood Capital*, 541 F. App'x at 447.

*Second*, Plaintiff's testimony is also belied by Defendants' room rental records. Though Plaintiff "guess[ed]" that Price "made the reservation[s]," E.P. Tr. at 161:8–10, Defendants have only *one* room rental record under Price's name—a three-night stay between March 31 and April 3, with the room registered to him and him alone. Walker Decl. at Ex. 1A. Because "record[s] were regularly kept for a matter of that kind," the absence of any other room rental records is affirmative "evidence" that "prove[s]" that "the matter did not occur." Fed. R. Evid. 803(7)(b); *see Neria v. Disk Network LLC*, 2020 WL 3403074, at *4 (W.D. Tex. June 19, 2020) (refusing to credit the plaintiff's claim, without evidence, that "he received approximately fifteen or sixteen calls from Defendant" where the defendant's "call log show[ed] four calls"); *S.A.S. v. Hilton Domestic Operating Co. Inc.*, 795 F. Supp. 3d 1294, 1309 (W.D. Wash. 2025) (granting summary judgment

where hotel defendants "conducted a reservation system review reaching back to" the alleged trafficking period, "searched both for [the plaintiff's] name, as well as several other names provided in connection with the suit," and found no stay records that supported the plaintiff's allegations).

In sum, the claim that Plaintiff was trafficked continuously at the Tucker Motel 6 between mid-February to April 2014, supported only by her own say-so and contradicted by record evidence, does not create a "genuine issue for trial." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Plaintiff's Participant Claim Under the TVPRA Fails.

Even where testimony might otherwise establish a genuine issue of material fact on whether a plaintiff was trafficked at a property, it does not necessarily create a genuine issue on all elements of the alleged TVPRA claims. A participant claim under the TVPRA requires Plaintiff to prove four elements: That Defendants "(1) knowingly benefited (2) from participating in a venture; (3) that … violated the TVPRA as to [Plaintiff]; and (4) . . . [Defendants] knew or should have known that the venture violated the TVPRA as to [Plaintiff]." *K.E.C. v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 729 (E.D. Tex. 2024) (Truncale, J.) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021)). Plaintiff cannot satisfy any of these elements.

### A. Defendants Did Not Participate in a Venture that Trafficked Plaintiff.

Plaintiff theorizes that there were two "ventures" in which Defendants supposedly participated. The first is a G6-only venture—*i.e.*, that Defendants participated in a relationship with each other by "operating the Motel 6, which had an extensive history of pervasive crime and commercial sex activities." FAC ¶ 101. But a business cannot engage in a "venture" with itself. *See Red Roof Inns*, 21 F.4th at 725 (to "participate" is to "take part in or share *with others* in common or in an association" (emphasis added)); *see also G.W. v. Northbrook Indus., Inc.*, 739 F.

Supp. 3d 1243, 1251 (N.D. Ga. 2024) (rejecting the notion that "simply running a hotel business … satisfies the participation prong"), *vacated on other grounds*, *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257 (11th Cir. 2026). And Plaintiff cannot circumvent this rule by asserting a "venture" between the business and its own corporate affiliates.[6] What is more, even assuming Defendants alone made up a "venture," there would still be no statutory violation. Plaintiff must show that the relevant venture *itself* "engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); *G.G. v. Salesforce.com Inc.*, 76 F.4th 544, 553 (7th Cir. 2023) (plaintiff must establish "the existence of a venture that violated Section 1591"). But Plaintiff has no evidence that Defendants' hotel venture *itself* trafficked Plaintiff, *see infra* Part III; *see also, e.g.*, *R.C. v. Choice Hotels Int'l, Inc.*, 2024 WL 1443412, at *3 (N.D. Ohio Apr. 2, 2024) (granting summary judgment on hotel-venture claim because "there is no evidence that the hotel venture between Choice and the Akron Econo Lodge ever committed a sex trafficking act"); *Tyla D. v. MGM Resorts Int'l*, 2024 WL 4839744, at *4 (D. Nev. Nov. 19, 2024) (granting motion to dismiss because the plaintiff failed to plausibly allege that "the casino ventures violated" § 1591). Indeed, Plaintiff herself admitted as much by making clear in her FAC that she "does not allege that Defendants perpetrated her sex trafficking." FAC ¶ 3; *see also id.* ¶ 18 n.4 ("Plaintiff's lawsuit arises under a beneficiary"—not "perpetrator"—theory of liability.").

Plaintiff's second (and principal) theory is that Defendants participated in a venture with her trafficker. On this view, Defendants "took part in a common undertaking or enterprise involving risk and potential profit by … renting rooms to Plaintiff's traffickers [sic] at the Motel 6

---

[6] *Cf. Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) ("It is a long-standing rule in this circuit that a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'"); *Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316, 1317 (5th Cir. 1984) (same rule among corporate affiliates); *Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 440–41 (5th Cir. 1987) (holding that a parent corporation, a subsidiary, and its employees did not form a RICO enterprise).

for days and weeks, notwithstanding the red flags and signs it observed or should have observed demonstrating that Plaintiff was a minor victim of sex trafficking at the Motel 6." FAC ¶ 101. But there is no evidence that Defendants participated in a venture with Plaintiff's trafficker.

Under this Court's pleading-stage standard, "leasing rooms" to a plaintiff's trafficker as part of a "continuous business relationship" amounts to participation in a venture. *C.L.F. v. G6 Hosp., LLC*, 1:23-cv-00303, Dkt. 75 at 25–26 (E.D. Tex. Dec. 8, 2024); *see also T.D.B. v. G6 Hosp., LLC*, 9:23-cv-00174, Dkt. 164 at 7 (E.D. Tex. Apr. 6, 2026) ("A continuous business relationship can be shown using allegations of *repeated interactions between the trafficker and hotel staff*.") (quotation omitted).[7] But Plaintiff has not carried her burden to establish that Defendants "leas[ed] rooms" or otherwise had a "continuous business relationship" with her alleged trafficker, Price.

As explained in Part I, Defendants conducted a comprehensive search of their room records, and found only *one* record of Price renting a room for *three nights* at the Tucker Motel 6. Walker Decl. ¶¶ 6, 9, and at Ex. 1A. This solitary stay does not amount to a "continuous" business relationship. In *S.A.S.*, for instance, the court found that the plaintiff's "testimony that she was trafficked at the [hotel] by two different men for a total of 30 to 60 non-consecutive days between 2002 and 2016 is simply not enough for a reasonable jury to find a *continuous* business relationship." 795 F. Supp. 3d at 1309. After all, this test asks for "evidence of an *ongoing* pattern

[7] In Defendants' view, "participation in a venture" instead requires "t[aking] part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 725. Under that standard, "merely renting a hotel room to traffickers, coupled with actual or constructive knowledge of sex trafficking" does not "constitute[] 'participation in a venture.'" *A.G.*, 171 F.4th at 1269 (rejecting "continuous business relationship" standard); *Red Roof Inns*, 21 F.4th at 726–27 (a hotel does not "participate in a venture with a sex trafficker" merely by "financially benefit[ing] from renting hotel rooms to the" trafficker and "observing" "signs of sex trafficking"). Regardless, the evidence fails to satisfy even the "continuous business relationship" standard. But Defendants preserve their arguments regarding the "participation in a venture" element for appeal. *See* G6 Hospitality Property LLC's Mot. for Judgment on the Pleadings, *F.F. v. G6 Hospitality Property LLC*, No. 1:25-cv-00029, Dkt. 27 at 13–22 (June 6, 2025); Order Denying Defendant's Mot. for Judgment on the Pleadings, F.F., No. 1:25-cv-0029 (Mar. 6, 2026) (Truncale, J.).

of activity between the civil defendant and the trafficker that is sufficient to infer the defendant knew or should have known that they were facilitating the specific trafficker's venture." *Id.* at 1310 (emphasis added). One three-night stay is hardly sufficient to establish that Defendants should have known they were facilitating Price's alleged venture. Indeed, this Court recently confirmed that a "continuous business relationship" requires "repeated interactions" between the hotel and the trafficker. *T.D.B.*, No. 9:23-cv-00174, Dkt. 164 at 7. It makes sense, then, that when this Court has found the "participation in a venture" element to be adequately alleged, it has relied in significant part on allegations that the hotels provided traffickers with rooms "for several years." *E.g.*, *G.M.F. v. G6 Hosp., LLC*, 1:23-cv-00280, Dkt. 81 at 10 (E.D. Tex. Sept. 26, 2024); *R.B. v. G6 Hosp., LLC*, 1:23-cv-00286, Dkt. 68 at 12 (E.D. Tex. Sept. 26, 2024); *D.D.J. v. G6 Hosp., LLC*, 1:23-cv-00269, Dkt. 95 at 10 (E.D. Tex. Sept. 30, 2024); *C.L.F.*, 1:23-cv-00303, Dkt. 75 at 26. Without evidence anywhere near that ballpark, Plaintiff has not shown a "continuous business relationship" between Defendants and Price.

Further, there is scant evidence that anyone at the Tucker Motel 6 "ever communicated with or transacted with [Price], let alone repeatedly." *T.D.B.*, No. 9:23-cv-00174, Dkt. 164 at 7. Price "did not loiter" inside public areas of the hotel "while [Plaintiff] was with clients," *T.D.B.*, No. 9:23-cv-00174, Dkt. 164 at 7; instead, "he would sit in the car the whole time and then come straight back to the room after the man left." E.P. Tr. at 176:5–18. Tucker Motel 6's "layout allowed [Price] to enter [Plaintiff's] room directly from the parking lot," so he would not have had to go "through the front desk area to reach the room." *T.D.B.*, No. 9:23-cv-00174, Dkt. 174 at 6–7; Ex. R, Tucker Motel 6 Map. And while Plaintiff testified that Price would handle check-in, she never witnessed him interacting with staff during this process because she "didn't go in with him to actually obtain the room." E.P. Tr. at 161:14–24. Thus, she does not testify as to any particular

interactions between Price and Tucker Motel 6 employees. The lack of evidence of "repeated interactions between [Price] and hotel staff" is further reason that no reasonable jury could find that Defendants maintained a "continuous business relationship" with Price. *T.D.B.*, No. 9:23-cv-00174, Dkt. 164 at 7.

Because the evidence is "so one-sided" that a jury could not find in Plaintiff's favor on the participation-in-a-venture element, Defendants "must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

**B. Defendants Did Not Knowingly Benefit from Participating in a Venture that Trafficked Plaintiff.**

This Court has previously held that "the rental of a room … constitutes a financial benefit from a relationship with the trafficker sufficient to meet" the "knowingly benefit" element of § 1595(a) under a "continuous business relationship" theory. *K.E.C.*, 750 F. Supp. 3d at 733. That standard is not met here.

Defendants received less than $150 in revenue for Price's three-night room rental. Walker Decl. at Ex. 1A. That does not suffice to show that Defendants "knowingly benefit[ed] … *from participation in a venture*." 18 U.S.C. § 1595(a) (emphasis added). Rather, that revenue would have resulted from an "arms-length transaction," *see Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024), which does not qualify as a knowing benefit from an illicit venture. Indeed, Defendants' expenditures on *anti-trafficking* training and security measures on this property alone would have far exceeded this amount. Ex. F. at 9. Thus, no reasonable jury could possibly conclude that Defendants knowingly benefited from a venture with Plaintiff's trafficker or otherwise.

**C. Defendants Neither Knew Nor Should Have Known About the Venture's Trafficking Violations.**

Plaintiff's participant claim also requires her to prove that Defendants "knew or should have known" that the venture "has engaged in an act in violation of this chapter." 18 U.S.C.

§ 1595(a). In other words, Defendants must have had actual or constructive knowledge that "*the* venture in which they participated and from which they benefited violated the TVPRA as to the plaintiff." *K.E.C.*, 750 F. Supp. 3d at 731 (emphasis added, brackets omitted).[8] But Plaintiff cannot produce evidence to show that Defendants knew or should have known about her trafficking.

*First*, Plaintiff must show that Defendants knew or should have known that "the venture" in which they supposedly participated "harbored" Plaintiff (or performed another listed act) in violation of § 1591. FAC ¶ 68. She cannot do so. Section 1591 is a criminal statute, and "in the criminal context," to "harbor[]" "does not mean simply 'to house.'" *L.M. v. 42 Raleigh, LLC*, 2024 WL 4204906, at *5 (E.D.N.C. Sept. 16, 2024) (quoting *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278 (4th Cir. 2024)). Rather, it means "something akin to 'receiv[ing] clandestinely and without lawful authority a person for the purpose of so concealing him."' *Doe No. 1 v. Rajveer LLC*, 2025 WL 907890, at *4 n.4 (M.D. Ala. Mar. 25, 2025) (quoting *Harbor*, Black's Law Dictionary (6th ed. 1990)).

Here, Plaintiff offers no evidence for why Defendants should have suspected there was "harboring" or anything else afoot. Plaintiff's testimony suggests that she was able to move about the hotel freely, as she frequently visited the vending machine and the front desk to reactivate her key card. E.P. Tr. at 163:19–21; 166:23–167:7. Likewise, housekeeping was not barred from accessing her room. *Id.* at 166:23–167:7. Nor was she ever seen with her trafficker. *Id.* at 161:5–7. Staff members would thus have had no reason to think that anyone was shielding her from

[8] This Court has elsewhere stated that "[t]he mens rea language in § 1595(a) is tethered to the *venture*, not the victim." *D.D.J.*, 1:23-cv-00269, Dkt. 95 at 14. But where—as here—the alleged venture has trafficked one victim, the defendant must know about that individual victim, as "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'" *G.G.*, 76 F.4th at 557.

detection or obtaining services from her against her will, meaning they should not have known that she was being "harbored."

*Second*, no jury could find that Defendants knew or should have known that Plaintiff "ha[d] not attained the age of 18 years and w[ould] be caused to engage in a commercial sex act." 18 U.S.C. §§ 1591(a), 1595(a). To begin, there is no evidence to suggest that Defendants had actual or constructive knowledge of Plaintiff's minor status. Plaintiff says only that "there's no way a grown woman, a grown man did not know I was a child," E.P. Tr. at 204:7–205:2, but this conclusory assertion (and others like it) is far from sufficient to create a jury question about whether Defendants knew or recklessly disregarded her age. *McFaul*, 684 F.3d at 571 ("Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."). Indeed, Tucker Motel 6's General Manager testified that she did not recognize Plaintiff *at all*—let alone that she knew of her minor status—noting that Plaintiff would have "stood out right away," given the demographics of the property's clientele. Primm Tr. at 133:4–134:16.

Nor can Plaintiff show that Defendants knew or should have known that she was "caused to engage in a commercial sex act." 18 U.S.C. §§ 1591(a), 1595(a). To start, Plaintiff did not testify that her trafficker ever accompanied her in public areas of the Tucker Motel 6. E.P. Tr. at 161:5–7. Instead, Plaintiff encountered motel staff by herself, when she purportedly went to the front desk to reactivate her key card, or, on one occasion, to extend Price's reservation. E.P. Tr. at 163:6–21. But nothing about these interactions would have led staff to suspect that Plaintiff was being caused to engage in commercial sex. Plaintiff did not tell staff that she was a trafficking victim, seek help, or appear in distress. *Id.* at 168:20–169:7; 173:11–24. While she would wear "skimpy, scandalous clothes," the fact that a guest is wearing "short," "tight" clothes with "cleavage" exposed is hardly

a tip-off that she is being caused to engage in commercial sex. *Id.* at 169:8–13. Plaintiff emphasizes her youth and the fact that it was the "middle of the school year," *Id.* at 204:7–205:2, but that does not automatically suggest that she was being *trafficked*. Rather, staff could have equally assumed that she ran away from home with an older boyfriend—particularly without other indicia of commercial sex.

And Plaintiff's evidence on that front is insufficient. Plaintiff testified that she visited the vending machine multiple times a day to purchase condoms, suggesting that the vending machine was near the front desk such that staff should have observed her. *Id.* at 166:23–167:7. In reality, the vending machine at the Tucker Motel 6 was in a separate room and was not at all visible from the front desk. *Id.* at 168:1–3; Walker Decl. ¶ 10; Ex. S, G6_EP0001316. Plaintiff also testified that she had "at least five men a day coming in and out of [her] room," but she did not claim that motel staff would have observed this "heavy foot traffic." *Contra D.D.J.*, 1:23-cv-00269, Dkt. 95 at 14 (finding knowledge in part based on allegations that "the heavy foot traffic into her room … was visible to hotel staff"). Finally, neither Plaintiff nor her trafficker blocked housekeeping from entering the room; instead, housekeeping would "empty [her] trash can" and "get [her] towels out of the room." E.P. Tr. at 166:23–167:7. That is not nearly enough to suggest that Plaintiff was a minor and being caused to engage in commercial sex.

Therefore, because Plaintiff cannot raise a genuine dispute of fact to show that Defendants "knew or should have known" about her trafficking, the Court should enter summary judgment on Plaintiff's participant claim on this basis as well.

## III. Plaintiff's Claim Under Texas Civil Practice and Remedies Code § 98.002(a) Fails.

The Texas Civil Practice and Remedies Code imposes civil liability on any "defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person." Tex. Civ. Prac. Rem. Code § 98.002(a). Plaintiff asserts

both perpetrator and participant claims, claiming that Defendants trafficked her by "harbor[ing]" and "provid[ing]" her, and that Defendants participated in a venture with her trafficker and through its operation of the Tucker Motel 6. FAC ¶¶ 111–12, 114. Both claims fail for numerous reasons.

*First*, these claims are time-barred. Texas law imposes a five-year limitations period for trafficking-related offenses. *See* Tex. Civ. Prac. Rem. Code § 16.0045(b)(3) (providing that a plaintiff must sue "not later than five years after the cause of action accrues" for violations of "Section 20A.02, Penal Code (trafficking of persons)"); FAC ¶¶ 112–13 (alleging that Defendants violated Texas Penal Code §§ 20A.02(a)(2), (4), (5), and (6)). Plaintiff was last trafficked at Tucker Motel 6, *at the latest*, in May 2014, meaning that the limitations period expired in May 2019. Yet she did not sue until March 11, 2024—nearly five years too late. *See* Compl., Dkt. 1. And the FAC does not allege any basis for tolling. *See generally* FAC. The Court should enter judgment on these claims for this reason alone.

*Second*, no reasonable jury could find that Defendants themselves "engage[d] in the trafficking of [Plaintiff]," Tex. Civ. Prac. Rem. Code § 98.002(a)—as the FAC elsewhere admits, FAC ¶ 3 ("Plaintiff does not allege that Defendants perpetrated her sex trafficking."). Plaintiff alleges that Defendants "harbor[ed]" and "provid[ed]" her "while she was trafficked at the Motel 6," but there is no evidence to support that claim. FAC ¶ 112; *see* Tex. Penal Code § 20A.01(4) ("'Traffic' means to … harbor, provide …").

As explained above, the term "harbor" in the criminal context means "something akin to 'receiv[ing] clandestinely and without lawful authority a person for the purpose of so concealing him." *Rajveer*, 2025 WL 907890, at *4 n.4; *see Lydia K. v. G6 Hosp. Franchising LLC*, 2026 WL 370057, at *5 (N.D. Tex. Feb. 10, 2026) (explaining that the "Texas statute closely resembles the TVPRA," so federal caselaw is instructive). Here, the record is devoid of any suggestion that

*Defendants* received Plaintiff "clandestinely" "for the purpose of so concealing [her]" or otherwise. *Rajveer*, 2025 WL 907890, at *4 n.4. For instance, Plaintiff does not point to any evidence that Defendants sought to shield her from detection, cause her to engage in commercial sex while she was there, or prevent her from leaving.

Likewise, there is no evidence that Defendants "provided" Plaintiff, meaning "to supply or make available." *C.C. v. Rashid*, 2026 WL 252548, at *8 (D. Nev. Jan. 29, 2026) (quoting *Provide*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/provide). In *C.C.*, the court found that the defendants "knowingly provided" the plaintiff where their employees allegedly "brokered sex deals between Plaintiff and [casino] customers" and "directed Plaintiff to specific clients sitting at specific tables and took a cut of her earnings." *Id.* Here, by contrast, Plaintiff does not claim that anyone at Tucker Motel 6 played any role in connecting her with clients.

Further, "the criminal provisions require the plaintiff to allege that they were a victim of a Chapter 20A crime committed by the defendant, which requires demonstrating that the defendant had actual knowledge of the victim's trafficking." *S.M.A. v. Salesforce, Inc.*, 2025 WL 888433, at *12 (N.D. Tex. Mar. 21, 2025). As discussed above, Plaintiff cannot even show that Defendants had *constructive* knowledge of her trafficking. *See supra* Part II.C. For this reason, too, Defendants are entitled to summary judgment on Plaintiff's state-law perpetrator claim.

*Finally*, "[b]ecause the Texas statute mirrors the TVPRA," Plaintiff's state-law participant claim fails for the same reasons as the TVPRA participant claim. *Lydia K.*, 2026 WL 370057, at *5–6; *see supra* Part II. In fact, Plaintiff's participant claim is even weaker under Texas law because the Texas Supreme Court has interpreted the "participation in a venture" requirement more strictly than has this Court. *See In re Facebook, Inc.*, 625 S.W.3d 80, 96–97 (Tex. 2021). That

Court explained that "'participation' connotes more than mere passive acquiescence in trafficking conducted by others." *Id.* at 96. Instead, "'[p]articipation' typically entails, at a minimum, an overt act in furtherance of the venture." *Id.* Thus, to "participate in a venture," the defendant must engage in "some affirmative conduct—that is, an overt act beyond mere negative acquiescence—designed to aid in the success of the venture." *Id.* at 97 (quotation omitted).

Plaintiff cannot make that showing on this record. *At most*, the evidence shows that Defendants rented a room for three nights to Plaintiff's trafficker. There is no evidence that Defendants took any steps or performed any overt act to "aid in the success of [Price's] venture." *Id.* For instance, Plaintiff does not claim that hotel staff served as "lookouts" to warn Price of police activity, or that staff afforded him any special treatment not granted to ordinary guests. Therefore, for this reason and all the reasons outlined above, no reasonable jury could find that Defendants violated Section 98.002(a) as participants.

**CONCLUSION**

For the foregoing reasons, Defendants request that the Court grant their Motion for Summary Judgment, enter judgment in their favor, and dismiss Plaintiff's claims with prejudice.

Respectfully submitted this 30th day of April, 2026.

By: */s/ Bethany K. Biesenthal*

Bethany K. Biesenthal
Illinois Bar No. 6282529
Kristina K. Cercone
Illinois Bar No. 6306298
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
T: 312.269.1541
F: 312.782.8585
bbiesenthal@jonesday.com
kcercone@jonesday.com

Andrew J. Clopton
Michigan Bar No. P80315
Laura A. Frantz
Michigan Bar No. P87814
JONES DAY
150 West Jefferson Avenue, Suite 2100
Detroit, MI 48226
T: 313.739.3939
F: 313.230.7997
aclopton@jonesday.com
lfrantz@jonesday.com

*Counsel for Defendants*
*G6 Hospitality LLC*
*G6 Hospitality Property LLC*
*Motel 6 Operating L.P.*

Jack P. Carroll
Orgain Bell & Tucker, LLP
505 Orleans Street, Suite 500
P.O. Box 1751
Beaumont, TX 77704-1751
Phone: (409) 838-6412
Facsimile: (409) 838-6959
jpc@obt.com

*Counsel for Defendants*
*G6 Hospitality Property LLC*
*Motel 6 Operating L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2026, a true and correct copy of the foregoing was sent via electronic mail to all counsel or parties of record

*/s/ Bethany K. Biesenthal*
Bethany K. Biesenthal

**CERTIFICATE OF SEALING MOTION**

Pursuant to Local Rule CV-5(a)(7), I hereby certify that a motion to seal the unredacted versions of Defendants' Motion for Summary Judgment as to the Merits and related sealed exhibits has been filed.

*/s/ Bethany K. Biesenthal*
Bethany K. Biesenthal