**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JANE DOE (E.P.), an individual<br><br>*Plaintiff*,<br><br>v.<br><br>G6 HOSPITALITY, LLC, G6 HOSPITALITY PROPERTY, LLC, and MOTEL 6 OPERATING, L.P.<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:24-CV-216-MJT |

**ORDER ON DEFENDANTS' MOTION**
**TO STRIKE OR EXCLUDE EXPERT TESTIMONY OF NAESHIA MCDOWELL**

Pursuant to 28 U.S.C. § 636(b)(1) and E.D. TEX. LOC. R. CV-72, the Honorable Michael J. Truncale, U.S. District Judge, referred (doc. #83) Defendants' Motion to Strike or Exclude Expert Testimony of Naeshia McDowell (doc. #78) to the undersigned magistrate judge for consideration and disposition. After review, the undersigned **ORDERS** that Defendants' Motion be **DENIED** in part and **GRANTED** in part.

**I. BACKGROUND**

This case is one of many in this district arising under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Plaintiff E.P. filed her operative complaint (doc. #62) on August 22, 2025,[1] which alleges that she was a victim of sex trafficking "because Defendants chose to ignore, allow, condone, facilitate, and or/support such" (doc. #62 at 33) and are therefore subject to liability under the TVPRA, which provides a cause of action against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that

[1] The original complaint was filed on March 11, 2024. (Doc. #1.)

person knew or should have known has engaged in an act in violation of" the act. 18 U.S.C. § 1595(a).

Among other legal elements Plaintiff must prove with respect to the Defendants, under § 1595(a), E.P. may only recover damages if she is a "victim of a violation of [Chapter 77 of Title 18 of the U.S. Code]." In her complaint, E.P. alleges that she "was trafficked for sex as a 15-year-old at the Motel 6 in violation of 18 U.S.C. § 1591," which concerns sex trafficking of children or by force, fraud, or coercion. (Doc. #62 at 7 ¶ 18.) In their answer, Defendants do not stipulate the truth of this allegation. (Doc. #65 at 4–5 ¶¶ 18;21.) Whether E.P. was, in fact, a victim of a violation of § 1591 is a critical legal threshold for her claim. In establishing that she meets this legal threshold, Plaintiff has solicited the opinion of Naeshia McDowell, an expert on minor sex trafficking dynamics from a public health perspective. (Doc. # 93 at 6.) McDowell interviewed E.P. on November 11, 2025 (doc. #78-1 at 15), employing the Commercial Sexual Exploitation-Identification Tool ("CSE-IT") to "identify risk factors associated with suspected victims of commercial sexual exploitation." *Id.* In the resulting report (doc. #78-1), McDowell concludes that E.P. was "recruited, entrapped, and enmeshed" by traffickers in a manner "consistent with established child trafficking dynamics." (Doc. #78-1 at 23.) Defendants received this report during discovery on December 16, 2025. (Doc. #69.)

On February 10, 2026, Defendants moved to strike or exclude the expert testimony of McDowell on three bases: (1) that McDowell lacks the requisite expertise and qualifications to issue her opinions (2) that McDowell uses unreliable principles and data (3) that McDowell offers impermissible legal conclusions. (Doc. #78.) Plaintiff filed a timely response. (Doc. #95.) The Defendants and Plaintiff have filed a reply (doc. #111) and sur-reply (doc. #118) respectively.

## II. Discussion

Experts qualified by "'knowledge, skill, experience, training or education' may present opinion testimony to the jury, as long as four criteria are met: '[1] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; [2] the testimony is based on sufficient facts or data; [3] the testimony is the product of reliable principles and methods; and [4] the expert has reliably applied the principles and methods to the facts of the case.'" *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 & n.85 (5th Cir. 2018) (quoting Fed. R. Evid. 702). Under this rule, "district courts are assigned a gatekeeping role to determine the admissibility of expert testimony." *Harris v. FedEx Corp. Servs., Inc.,* 92 F.4th 286, 303 (5th Cir. 2024) (quoting *United States v. Valencia*, 600 F.3d 389, 423–24 (5th Cir. 2010)). Nevertheless, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Thus, "[w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)).

For the reasons discussed below, McDowell's testimony does not fall under this exception, and this court's role as gatekeeper does not call for the striking or exclusion of her opinions in their entirety.

**A. McDowell's Testimony is Sufficiently Reliable**

1. McDowell's Qualifications

Defendants argue that "McDowell is not qualified to opine on much of what she offers" (doc. #78 at 1) but do not invoke the proper standard. In determining the admissibility of expert testimony, "the overarching concern is generally whether the testimony is relevant and reliable"—the latter two factors distilled from Rule 702. *Puga*, 922 F.3d at 293 (citing *Daubert*, 509 U.S. at 589). An expert's qualifications are relevant in how they speak to those operative elements. *See Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009) (finding that the question is not the relative qualifications of a party's experts, "but rather, whether an expert's testimony is reliable").

Defendants are correct that in order to issue a psychological or diagnostic opinion, an expert must possess the requisite credentials. *See Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2025 WL 311550, at *8 (M.D. Tenn. Jan. 27, 2025), *modified on reconsideration*, No. 3:21-CV-00272, 2025 WL 380514 (M.D. Tenn. Feb. 3, 2025). "An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). This court has ruled similarly in related litigation. *Doe (E.M.B.) v. G6 Hosp.,* LLC, No. 9:23-CV-00173-MJT-CLS, 2025 WL 2556106, at *7 (E.D. Tex. Apr. 23, 2025). But as Plaintiff points out (doc. #95 at 12;15), McDowell is not offering a medical diagnosis, but rather her opinion on whether what E.P. has *alleged* happened to her is consistent with child sex-trafficking dynamics, which in turn will assist the jury in determining the factual prerequisites of whether she was a "victim of a violation of [18 U.S.C. § 1591]." 18 U.S.C. § 1595. "Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence." (internal quotation marks omitted) *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 487 (1997) (quoting FED. R. EVID. 401). McDowell's testimony bears on facts pertinent to a threshold legal question and is plainly relevant. The question is whether her credentials are sufficient to render her opinion on such dynamics reliable.[2] "[T]here are many kinds of experts, and many different kinds of expertise," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999), and the Fifth Circuit has "never required formal educational credentials to qualify a witness as an expert." *United States v. Haines*, 803 F.3d 713, 727 (5th Cir. 2015). Nevertheless, McDowell has such credentials on child sex-trafficking dynamics. (Doc #95-1.) Whether those qualifications are compelling "bear[s] chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452.

Defendants string together a sequence of excerpts from *Tanner v. Westbrook*, 174 F.3d 542 (5th Cir. 1999) for the proposition that this court must decide whether McDowell's knowledge is sufficiently specialized to support her opinions.[3] As the undersigned has already highlighted in a related case, "the Fifth Circuit has repeatedly found error in district court rulings that exclude experts on the basis of lack of specialization." *Doe (E.M.B.)*, 2025 WL 2556106 at *5. Once

---

[2] Whether those findings, so phrased, constitute an impermissible conclusion of law is explored below.

[3] It is worth clarifying the relevant doctrine. In *Tanner v. Westbrook*, the Fifth Circuit reviewed a decision from the Northern District of Mississippi regarding the admissibility of a doctor's opinion on medical causation in a malpractice suit. The District Court admitted the causation opinion, whereas the Fifth Circuit reversed and remanded on the grounds that the doctor "had no background in studying the causes of cerebral palsy." 174 F.3d at 548. Since then, the Fifth Circuit has clarified narrower grounds for *Tanner*, guiding that it does not stand for the proposition that there must be a one-to-one relationship between an expert's qualifications and the subject matter of their testimony. *See United States v. Arthur*, 51 F.4th 560, 572 (2022). In *Huss*, 571 F.3d 442, the Fifth Circuit found that the holding in *Tanner* was informed by the fact that the expert was offering a theory of causation that was not supported in the literature *and* that was not informed by any direct examination or personal experience—not simply a lack of specialization with respect to the expert's credentials. McDowell's testimony is importantly distinguished, first in that it is not offering a scientific theory of causation which may warrant higher scrutiny, second, that it is grounded in an accepted methodology in her field's literature, and third, that it is informed by a direct examination and personal experience.

again, "[t]he undersigned is not exactly chomping at the bit to commit the 'repeated . . . error . . . [of] excluding experts on the basis of lack of specialization[.]'" *Id.* at *16.

2. McDowell's Methodology

"[T]he court must evaluate whether the reasoning and methodology underlying the testimony is valid and can be reliably applied to the facts of the case." *Valencia*, 600 F.3d at 424. McDowell employs the CSE-IT for her opinion that what E.P. alleges she experienced is consistent with child sex-trafficking dynamics. (Doc. #78-1 at 23.) In their motion, Defendants attack the methodology of McDowell's report as unreliable on two grounds: (a) that the methods employed have never been applied retrospectively (b) that the methodology does not adequately screen the credibility of the Plaintiff. The undersigned addresses the arguments in turn.

*a. Retrospective Application of the CSE-IT*

Defendants claim that administering the CSE-IT "retrospectively" contradicts its description as a screening and identification tool. (Doc. #78.) As Plaintiff highlights via exhibit, the CSE-IT "was created to help professionals identify children and youth who *have been*, or are being, commercially sexually exploited[.]" (Doc. #95-3 at 4.) Furthermore, the tool, by its very nature as an interview with a subject on their past experiences, is necessarily and always administered "retrospectively." The fact that it is being employed with respect to E.P. after a longer period of time than is typical is really a matter of the *degree* to which McDowell conformed to the accepted use of the CSE-IT, rather than whether McDowell had used the tool in a manner different in *kind* from its design. As Plaintiff correctly suggests, whether the CSE-IT is validated for such a use "is an issue of weight, not admissibility. (Doc. #95 at 17.)

*b. Plaintiff Credibility is a Question for the Jury*

The Defendants' second argument fundamentally miscalculates the role of expert testimony. Defendants argue that McDowell's report is unreliable because she made unacceptable "credibility determinations in assessing the circumstances of E.P.'s alleged trafficking." (Doc. #78 at 9.) It is true that "expert testimony about plaintiff's truthfulness or credibility could theoretically cross the line into inadmissibility by, for example, invading the province of the jury." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-CV-1790-D, 2014 WL 1714487, at *35 (N.D. Tex. Apr. 30, 2014); *see Kambala v. Signal Int'l L.L.C.*, No. 1:13-CV-498, 2015 WL 11110594, at *13 (E.D. Tex. June 26, 2015) (finding that where the expert was "merely passing judgment on the witness's credibility or character" they "invade[d] the province of the jury.").

In this case, however, defendants' assertions are just another way of arguing that McDowell did not adequately *screen* E.P.'s credibility. Experts are generally not under any such obligations, and "[a]s an expert witness, [McDowell] may offer expert opinions without having personal knowledge of the underlying facts supporting those opinions." *Sims v. City of Jasper, Texas*, No. 1:20-CV-124-MJT, 2023 WL 8258182, at *7 (E.D. Tex. Jan. 24, 2023). The credibility of the Plaintiff, and the truth of the underlying facts, is in the domain of the jury—and experts may form opinions based on disputed facts that the jury will decide on. *See, e.g.*, *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (2006) ("There is a critical distinction between an expert testifying that a disputed fact actually occurred . . . and an expert giving an opinion based on factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not."); *Atkinson Warehousing & Distrib., Inc. v. Ecolab, Inc.*, 99 F. Supp. 2d 665, 670 (D. Md., May 18, 2000) ("an opinion based upon a disputed fact may not be excluded simply because it pertains to an issue to be decided by the jury"); *cf. Sims*, 2023 WL 8258182 at *7 (holding that an

expert may state the facts they used to formulate an opinion, but cannot testify that they know those facts to be true).[4] This is a situation where "[the expert's] testimony would provide the jury with valuable information to consider when assessing the credibility of the Plaintiff's claims." *Does v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1364, 1371 (N.D. Da. Aug. 21, 2023) (denying defendant's motion to exclude an expert on the dynamics between sex traffickers and their victims and finding that testimony on typical reactions to those experiences were relevant). As a result, the court finds that the testimony is of probative value. *See id.*

**B. McDowell's Testimony Makes Impermissible Legal Conclusions**

"[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997). In practice, however, "distinguishing between admissible testimony regarding the inferences that can be drawn from facts of a certain case and an inadmissible ultimate legal conclusion . . . is often a fine line." *Cordes v. OSG Ship Management, Ltd.*, No. CIV.A. 12-2214, 2013 WL 1992178, at *4 (E.D. La. May 10, 2013). The difficulty in drawing this line sometimes stems from the fact that terms of art or those employed in statutory language are often those also used colloquially or within disciplines to refer to the conduct on which the expert has been retained to opine. *See, e.g.*, *United States v. Sullivan*, No. 20-CR-00337-WHO-1, 2022 WL 3716594, at *4 (N.D. Ca., Aug. 28, 2022) (whether testimony on if an incident qualified as a "data breach" warranted exclusion); *Stoler v. Penn Cent. Transp. Co*., 583 F.2d 896, 898 (6th Cir. 1978) (whether

[4] The undersigned recognizes that in some contexts—particularly where the opinion offered is on causation—an expert taking certain factual premises at face value may result in inadmissibility. *See Johnson v. Am. Honda Motor Co*., 923 F. Supp. 2d 1269, 1274–75 (2013) (finding that where the expert "accepted without question" a critical factual assumption without scrutiny, they rendered their opinion inadmissible as "the analytical gap between the available data and his ultimate opinion was simply too great."). Here, taking what the interviewee says at face value is a requirement of the CSE-IT method (which as far as the court can discern, is not designed as a probe into truthfulness) and therefore does not create the same "analytical gap."

an expert's testimony that a crossing was "extra hazardous" amounted to an impermissible conclusion of law); *Heflin v. Stewart County*, 958 F.2d 709, 715 (6th Cir. 1992) (whether the expert's use of the phrase "deliberately indifferent" rendered their testimony inadmissible); *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS, 2019 WL 1435934, at *3–4 (W.D. Ky. Mar. 29, 2019) (whether the expert's opinion that something amounted to a "trade secret" stated a legal conclusion).

Generally, "[i]f testimony "track[s] the language of the applicable statute" or uses a term that "has a specialized legal meaning that is more precise than the lay understanding of the term," the testimony is an impermissible legal conclusion. *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015). Accordingly, "the undersigned has consistently held that words like 'trafficking,' 'sex trafficking,' and 'trafficker' are not permitted during any *plaintiff-specific* or *plaintiff-referencing* discussions of sex-trafficking related experiences or happenings." *Doe (T.D.B.) v. G6 Hosp., LLC*, No. 9:23-CV-00174-MJT-CLS, 2025 WL 3516470, at *3 (E.D. Tex. Dec. 8, 2025). In concluding that E.P. was victimized by "traffickers" (doc. #78-1 at 23) McDowell's report clearly and flagrantly transgresses this proscription.

**C. The Proper Judicial Action at This Juncture**

The undersigned agrees that language in the expert report crosses the boundary of an impermissible legal conclusion and does not conform with the guidance in the court's previous orders in this litigation. Nonetheless, it is important to take a step back and remember what the Federal Rules of Evidence are all about. In theory, they are about protecting the integrity of the jury's role in a trial setting. *See, e.g.*, FED. R. EVID. 403; *United States v. Agofsky*, No. 1:03-CR-173, 2004 WL 7340721, at *2 (E.D. Tex. June 10, 2004) ("[T]he Federal Rules of Evidence are

designed to help ensure that *trials* will be fair") (emphasis added).[5] At this juncture, there is no jury, and any estimation as to probative versus prejudicial value of McDowell's testimony is an academic exercise.

Faced with the presence of legally conclusory statements within an expert report, Defendants had a few options. They may have, for instance, asked for limited modifications or pointed to the specific language that is impermissibly conclusory. Instead, based on the totality of their arguments—two of which this court rejects—they moved to exclude the opinions and testimony of Naeshia McDowell in their entirety. (Doc. #78 at 13.) As discussed, plenty of content within the report constitutes an admissible opinion. When that is the case, "such relief is much too broad to cure whatever specific issues may exist therein." *Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-65-LY-ML, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016). Sister courts in the Circuit "have found that the presence of impermissible legal conclusions in an expert's report is not a sufficient basis to strike the entirety of [their] testimony, particularly where, as here [their] report 'provides additional, potentially admissible opinion[s].'" *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022) (quoting *Novodea Systems, Inc. v. Colaberry, Inc.*, No. 6:20-CV-180-JDK, 2021 WL 6618488, at *2 (E.D. Tex. Nov. 8, 2021) (J. Kernodle). This approach has repeatedly been followed within the Eastern District of Texas. *E.g.*, *Novodea Systems*, 2021 WL 6618488 at *2 (holding that the moving party was not entitled to relief where they sought to strike the entirety of an expert testimony on the basis that it contained impermissible legal conclusions); *Alexander v. Martin*, No. 2:08-CV-400, 2010 WL 11530305, at *7 (E.D. Tex. June 24, 2010)

[5] This idealism should be tempered by reality. As scholars have highlighted, as the pretrial stage has become the center of gravity, "[t]he key role of rules of 'trial' evidence is their impact on the litigants' pretrial perception of the strength of their opponent's case and therefore their influence on the pretrial disposition of the case. Modern litigators use those rules far more frequently for the purpose of such pretrial assessments than they do to prepare for a trial." Edward J. Imwinkelried, *Rigor or Reach? Strictness or Scope?: The Continuing Battle Over the Parameters of The Supreme Court's Daubert/Kumho Reliability/Validation Test for the Admissibility of Expert Testimony*, 89 MO. L. REV. 615, 634 (2024).

(finding that while certain statements in an expert report may have amounted to legal conclusions, a motion to exclude the experts and their opinions in their entirety should nonetheless be denied). Relevantly, Plaintiff has averred in her latest briefings that that she "intends to elicit from Ms. McDowell legally permissible opinions that conform to the [c]ourt's prior orders" and that she has no objection to substituting language that may be legally conclusory. (Doc. #118 at 6.) The parties will likely continue to disagree on the relevant thresholds, but on its part, "the [c]ourt needs more trial context to determine whether *specific* testimony invades the province of the jury[.]" *Postar v. Hyland*, No. 5:24-CV-19-H, 2026 WL 145934, at *25 (N.D. Tex. Jan. 20, 2026) (emphasis added). Accordingly, "the defendant's pretrial request for nearly wholesale exclusion puts the cart before the horse." *Id.* The Defendants' overbroad relief notwithstanding, the "[c]ourt will not permit any testimony at trial that constitutes an improper legal conclusion." *Hyland*, 2026 WL 145934 at *26. Exercising its role as gatekeeper, the court orders that McDowell may not refer to persons as "traffickers," opine that she was "trafficked," or use language that concludes whether 18 U.S.C. § 1591 was actually violated.[6]

## II. Order

Defendants' motion to Strike or Exclude Expert Testimony of Naeshia McDowell (doc. #78) is **DENIED** in part and **GRANTED** as to the above-referenced impermissible legal conclusions.

**SIGNED this the 3rd day of September, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

[6] The court, as gatekeeper, is not required to do the work of counsel for them—here, writing reports that conform with prior orders on the Plaintiff's part, and presenting more tailored challenges to admissibility on the part of the Defendants. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system[.]" *14.38 Acres of Land*, 80 F.3d at 1078.